## FREIBERT v. SEWERAGE AND WATER BOARD OF NEW ORLEANS. *

No. 16005.

Court of Appeal of Louisiana. Orleans.

March 18, 1935.

*Rehearing denied April 15, 1935.

Gus A. Llambias, of New Orleans, for appellant.

M. C. Scharff, of New Orleans, for appellee.

LECHE, Judge.

Plaintiff brought this suit for damages for the death of her husband, and from a judgment in her favor defendant has appealed.

The transcript contains the following agreement of counsel: "It is admitted by counsel for the defendant that William Freibert, the deceased, at the time of his injury, was employed by A. G. Snyder and at the time of his injury was working at the Broad Street station of the Sewerage & Water Board painting and fell from a scaffold on to wires of the Sewerage & Water Board of high voltage and received burns as a result thereof and was taken to the Charity Hospital where he died the next day as a result of the burns he received and his age at the time of his death was approximately thirty years of age."

There were no eyewitnesses to the accident, and it is not quite clear how it occurred. The petition alleges that the deceased lost his balance while working on a scaffold and fell upon the high-tension wires. It appears that deceased was employed as a painter by A. G. Snyder and was engaged in painting at the Broad street station of the sewerage and water board. The wires in question were located in the top of the building, 35 feet from the ground, and lay along the top of the lowest roof trusses. The deceased was working in the monitor some 15 feet above the wires on a platform or scaffold made of boards and constructed or furnished by himself or his employer. The wires were part of a series of feeder lines coming into the building, one of which lines it was necessary to keep charged at all times for the purpose of operating the pumps. The wires were located where ordinarily no one would come in contact with them, and, when it was necessary for any one to work in the upper portion of the building, they were assigned to a particular section and the current in the wires in that particular section was cut off. If they notified those in charge of the station when they desired to work in another section, the current in that section was turned off. The wires in question were insulated with a weatherproof grade of insulation, but not insulated for protection against body burns. The sole charge of negligence in the petition is the failure of defendant to have the wires properly insulated and the violation of the city ordinance in this respect. The city ordinance No. 11782, C. C. S., approved October 18, 1929, a certified copy of which is contained in the record, reads as follows: "Section 1. Be it ordained by the Commission Council of the City of New Orleans, That, all electric light and power conductors, cables and wires used in overhead construction outside of the established underground district set forth in Ordinance No. 13,838 C. S., which shall be erected to carry 2,000 volts or more, also neutral conductors effectually grounded, need not be covered by insulation but may be strung bare."

There was therefore no statutory duty on the part of defendant to keep its wires insulated. The ordinance specifically provides that the wires "need not be covered by insulation, but may be strung bare." Exercise of its option under the ordinance to string its wires bare or to string them only with waterproof insulation does not necessarily relieve defendant of liability for injury to one coming in contact with the wires.

In the case of Clements v. Louisiana Electric Light Company, 44 La. Ann. 692, 11 So. 51, 52, 16 L. R. A. 43, 32 Am. St. Rep. 348, the court said: "It was the duty of the company, independent of any statutory regulation, to see that their lines were safe for those who by their occupation were brought in close proximity to them."

In Potts v. Shreveport Belt Railroad Company, 110 La. 1, 34 So. 103, 105, 98 Am. St. Rep. 452, it was said:

"A company maintaining electrical wires over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the necessary care and prudence at places where others may have the right to go either for work or pleasure, to prevent injury. It is the duty of the company under such conditions to keep its wires perfectly insulated, and it must exercise the utmost care to maintain them in this condition at such places. Joyce Electrical Law, §§ 445, 517.

"And a company maintaining such wires must see to it that their lines are safe for those who by their occupation are brought in close proximity to them."

In the case of Walters v. Denver Consolidated Electric Light Company, 12 Colo. App. 145, 54 P. 960, 961, the court said: "It is argued that there was no statute, ordinance, or other express law which required the defendant to equip all of its wires with insulating covers, and that, therefore, taking into consideration the situation of this exposed wire, no duty rested upon the defendant to keep it insulated. We may concede that at places where there is no apparent possibility of injury ensuing from electric wires it would not be negligence to leave them uncovered, and that no duty to keep them insulated would exist, unless it was imposed by some express law. But by this concession the question whether, consistently with the degree of care exacted in the management of an agency so dangerous as electricity, it was or was not the duty of the defendant to have its wires insulated at the particular place where this injury occurred, is by no means disposed of."

We must then determine independently of statutory provision whether or not there was negligence on the part of defendant and whether such negligence, if it existed, was the proximate cause of the injury.

In Hebert v. Lake Charles Ice, Light & Waterworks Co., 111 La. 522, 35 So. 731, 734, 64 L. R. A. 101, 100 Am. St. Rep. 505, the court said: "In the case of Will v. Edison Electric Illuminating Co. [200 Pa. 540, 50 A. 161, 86 Am. St. Rep. 732] the Supreme Court of Pennsylvania laid down as the rule applicable to a company like the defendant making use of such a dangerous agency that it was bound to know not only the extent of the danger, but to use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to its wires, and liable to come accidentally or otherwise in contact with them. The defendant (the court said), in accord with the common practice of electric companies, recognizes this obligation by insulating its wires; but the duty was not only to make the wires safe by proper insulation, but to keep them so by constant oversight and repairs."

In Bujol v. Gulf States Utilities Company (La. App.) 147 So. 545, 546, it was said:

"It is not disputed that the wires of the defendant company at this point in its line were not insulated, but the evidence shows that a line of this kind is not generally insulated, and that the National Bureau of Standards whose rulings govern in their construction does not require that they be. The duty of insulation seems to be limited, according to the authorities as we read them, 'to those points or places where there is reason to apprehend that persons may come in contact with the wires, and the law does not compel electric companies to insulate their wires everywhere, but only at places where people may go for work, business or pleasure, that is, where they may reasonably be expected to go.' Ruling Case Law, vol. 9, p. 1213, par. 31. From 20 Corpus Juris, p. 355, par. 42, we quote the following:

" 'The exercise of a sufficient degree of care requires a careful and proper insulation of all wires and appliances in places where there is likelihood or reasonable probability of human contact therewith. * * *

" 'The duty to insulate does not extend to the entire system or to parts of the line where no one could reasonably be expected to come in contact with it.' "

From the foregoing authorities it will be seen that there is a general duty imposed upon those dealing in or using such a dangerous agency as electricity to keep their lines or wires insulated in all places where one may reasonably be expected to go on business or pleasure. Let us see now to what extent that duty is imposed with reference to workmen or laborers of an independent contractor whose employment requires them to come in close proximity to such wires.

The case of Ryan v. St. Louis Transit Company, 190 Mo. 621, 89 S. W. 865, 868, 2 L. R. A. (N. S.) 777, is similar, in that plaintiff filed suit for the death of her husband who had no contractual relationship with the defendant. The court said: "The insistence is that the negligence of the softening of the insulation would not have caused any injury to the deceased, had he not caused the wrench to touch the wire, and no harm would have followed touching the wire with the wrench if the deceased had not had his hand on the pipe at the same instant he had it upon the wrench; and the doctrine is invoked that it is not negligence not to take precautionary measures to prevent an injury, which, if taken, would have prevented it, when the injury could not reasonably have been anticipated, nor would not, unless under exceptional circumstances, have happened. In determining the soundness of the proposition thus advanced by the appellant, it is essential to ascertain what duty the defendant owed to plaintiff's husband with reference to its live wires in the circumstances of this case. It is to be noted that there were no contractual relations between the deceased, husband of the plaintiff, and the defendant transit company, but it is undisputed that the deceased was upon the premises of the company with its knowledge and consent, and to do a work for which the company had contracted with the employer of the deceased. When the defendant company made its contract with the Cullen & Stock Heating & Ventilating Company to install the oil system in the defendant's power house upon plans and specifications prescribed by itself, it knew and was bound to anticipate the necessity under which the Heating & Ventilating Company rested of sending its employees upon its premises for the purpose of installing the pipes upon which the deceased was working when he was killed; and hence the duty devolved upon the defendant of keeping the electrical wires near which the deceased was required to work in the performance of his duty in installing the oil pipes, so insulated and protected as to be safe for the deceased to work in their vicinity."

In that case the relationship existing between the deceased and the defendant was exactly the same as it is in this case. The opinion then continues: "* * * And it must be held that the company in contracting for the work of installing the oil pipes anticipated, or in the exercise of ordinary care were bound to anticipate, that these workmen, while in the course of their employment, would touch or come in contact with these cables, and therefore the principal contention of the defendant that it could not have reasonably anticipated the occurrence of such an accident as this appears to us entirely untenable, but that on the contrary the want of a proper insulation of these cables was the proximate cause of the injury to plaintiff's husband."

And the following case note appears in 2 L. R. A. (N. S.) 777: "The duty charged on one who is engaged in the generation of electricity, to keep the wires within and about his building safe for the servants of another, who has contracted to perform certain work in or about the former's building, is imposed by the well-established and familiar doctrine that every man who, expressly or by implication, invites others to come upon his premises, assumes, to all who accept the invitation, the duty to protect them from any danger incurred by coming, which he knows of or ought to know of, and of which they are not aware."

It must be borne in mind that contributory negligence was not pleaded in this case and the trial judge properly excluded evidence in this respect. The sole question, therefore, for us to determine is whether there was any negligence on the party of defendant, and, if so, was that negligence the proximate cause of the injury? In considering this, it is necessary to consider the circumstances surrounding the accident. While the record is not illuminating, the petition alleges that deceased slipped and fell off of the scaffold upon which he was working, and thus fell upon, or came in contact with, the wires.

In Walters v. Denver Consolidated Electric Light Company, supra, it was said: "Now, the injury to the plaintiff was the direct result of the escape into his body of a current of electricity from the naked wire with which he came in contact. If the wire had been protected, he would not have been hurt; and, in its uninsulated condition, the result would have been the same, whether he had grasped

it voluntarily, or had been involuntarily forced against it. The immediate cause was the electricity concealed in the wire, the discharge of which into the body of the plaintiff was brought about by the contact which took place between himself and the wire; and the contact was merely the condition which enabled the cause to operate. The question of the legal effect of the boy's act in reaching out to the wire is in no manner connected with the question of proximate cause. It can be considered only in an examination of the charge of contributory negligence."

And in Williams v. Springfield Gas & Electric Co., 274 Mo. 1, 202 S. W. 1, 3, the court said: "Was respondent guilty of contributory negligence as a matter of law? Of course, his presence in the tree was not such negligence. Nor does the fact that he slipped or fell upon the wires bar the action. In Thompson v. Slater [197 Mo. App. 247], 193 S. W. [971], loc. cit. 974, 975, the St. Louis Court of Appeals decided an analogous question. A limb on which a boy was sitting broke and he fell against uninsulated wires passing through the tree. The court held the noninsulation and not the fall was the proximate cause of the injury."

We cite the above, not with reference to contributory negligence, the proof of which we have said was properly excluded, but to illustrate proximate cause in cases of this character.

In Colusa Parrot Mining & Smelting Co. v. Monahan (C. C. A.) 162 F. 276, 281, plaintiff, a laborer, slipped on a wet roof, and in falling caught hold of a live wire. In finding in his favor the court said: "There could have been no better evidence of the improper insulation of the wire in question than the shock the plaintiff received from touching it. At points or places where people have the right to go for work, business, or pleasure the insulation and protection should be made as nearly perfect as reasonably possible, and the utmost care used to keep them so."

In Humphreys v. Raleigh Coal & Coke Company, 73 W. Va. 495, 80 S. E. 803, 805, L. R. A. 1916C, 1270, a mine worker slipped on a rail or some other object, and in falling grasped an electric wire. The court found for plaintiff, and in speaking of electricity said:

"Therefore to use it at all by means of an uninsulated wire or other appliance, where the user knows any person may for any reason come in contact with it, without knowledge of the use to which the appliance is devoted, is tantamount to the placing of a deadly mine or trap, however free the user may be from wrongful intent. * * *

"Authorities cited abundantly show the user of electricity must provide against all probable contingencies and every possibility that can be readily foreseen or anticipated. If he knows any person is liable, in any way or for any reason, whether on a mission or enterprise of business or pleasure, to come in contact with a heavily charged electric wire he is using, he must insulate it, unless insulation is impossible by reason of incompatibility with the use to which it is devoted. In view of this principle, it is wholly immaterial that the place in which the wire was used was not a way of passage or place of ordinary work. The defendant should have had the wire insulated."

In Birsch v. Citizens' Electric Company, 36 Mont. 574, 93 P. 940, 942, plaintiff, a hod carrier, slipped and fell from a scaffold, and in falling came in contact with a heavily charged wire. In awarding him damages the court said:

"So far as the injuries received by plaintiff from coming in contact with the wire directly are concerned, we think it is a fair inference from the evidence that the negligence of the defendant was the proximate cause thereof. * * *.

"We think it may be said to be the general rule, sustained by the great weight of authority, that 'where the primary cause of an injury is a pure accident, occasioned without fault of the injured party, if the negligent act of the defendant is a co-operating or culminating cause of the injury, or if the accident would not have resulted in the injury excepting for the negligent act, the negligence is the proximate cause of the injury, for which damages may be recovered.'"

It is apparent from the jurisprudence that courts over the country have considered electricity an extremely dangerous agency and have imposed upon those dealing with it additional burdens of caution and prudence. It has been placed somewhat in the category of an animal feræ naturæ, the owner or harborer of which can seldom escape liability for its dangerous conduct. Where persons may reasonably be expected to go on business, pleasure, or otherwise, full protection must be given. In Hebert v. Lake Charles Ice, Light & Waterworks Co., supra, our Supreme Court, quoting with approval a Pennsylvania case (Will v. Edison Electric Illuminating Co., 200 Pa. 540, 50 A. 161, 86 Am. St. Rep. 732), laid down the rule that those making use of such a dangerous agency as electricity are not only

bound to know the extent of the danger, but must "use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to its wires, and liable to come accidentally or otherwise in contact with them."

When the sewerage and water board contracted with Snyder to paint its pumping station, it certainly must have known and anticipated that he would have to send his workmen into their plant. It must have been known that, when the upper portion of the interior of the pumping station was to be painted, workmen would have to perform their duties and labors above those wires. At the time of the accident, the deceased happened to be working in the monitor, the highest part of the roof structure, some 15 feet above the wires, but at other times in painting other parts of the roof structure he and his fellow workmen were no doubt required to work much closer to the high-tension wires. It cannot reasonably be said that deceased was not working in proximity to the wires, or was not "liable to come accidentally or otherwise in contact with them." The indisputable fact remains that he did come in contact with them and lost his life thereby. Whether, in falling, he involuntarily grasped them to support himself and break the fall, or whether he fell directly upon them and thus sustained the burns resulting in his death, is not disclosed by the record, and, in our opinion, makes no difference. That defendant knew of the extreme hazard caused by the presence of those highly charged wires is shown by the fact that it was its custom to shut off the current when any one was required to work in their proximity. This it failed to do in the present case, and the direct, proximate cause of death was the contact with the high-tension wires. The deceased, in order to reach the upper part of the roof structure, where he was working, had to pass those wires, and, while performing his labors in painting and moving his scaffold from place to place, was forced of necessity to be and remain in close proximity to the wires while he was working in the more or less limited space in the upper portion of the roof structure or attic. He could have been burned in ascending to the place where he was working, or in descending therefrom, or in moving about or changing the position of his scaffold, all of which could and should have been anticipated by defendant, which cannot be heard to now say that the particular manner in which he met his death in this instance could not have been foreseen or anticipated by it. The foregoing quotations from the jurisprudence so fully cover all phases of this case that it would be useless repetition to discuss them any further. We are convinced that the learned trial judge committed no error in finding for plaintiff.

Plaintiff derives her right of action from article 2315 of the Civil Code. That article gives her the right to recover, not only the damage sustained by her deceased husband, but such damages as she may have sustained by his death. The record discloses that plaintiff incurred funeral expenses in the sum of $387.50, and she is clearly entitled to that item of damage. The record further discloses that plaintiff's deceased husband, by reason of his contact with the high-tension wires, sustained severe and extensive burns about the body, resulting in his death on the following day, his pain and suffering being intense. Consequently we are of the opinion that the sum of $1,000 awarded her by the trial court for pain and suffering experienced by deceased is not excessive.

The deceased was, at the time of his death, approximately 30 years of age and earning the sum of $20 per week as a painter. The record shows that he had been married about 2 years, but that about 6 months prior to his death he had left plaintiff as the result of a family quarrel over a trivial matter. No suit for separation or divorce had been filed by either party, and plaintiff went to her husband immediately upon learning of his injury, stayed with him, and took charge of his body after death. There is nothing in the record to show that a suit for separation or divorce was contemplated nor that the breach could not be healed, and, in the absence of such evidence, it is not the policy of the law to presume that complete severance of the family tie was inevitable. We are consequently of the opinion that the award of the trial court in the sum of $1,500 for the loss of the plaintiff's husband is insufficient, and, in view of all the circumstances, it is our opinion that plaintiff is entitled to damages in this respect in the sum of $3,500.

For the reasons assigned, the judgment appealed from is amended by increasing the sum awarded plaintiff from $2,500 to $4,887.-50, with legal interest from judicial demand and all costs. In all other respects it is affirmed.

Amended and affirmed.

JANVIER, Judge (dissenting).

My inability to agree with my associates results solely from my belief that it could

not possibly have been within the contemplation—reasonable or unreasonable—of any one that Freibert could come into contact with the uninsulated wires of defendant.

I concede, arguendo, that it may have been negligence on the part of defendant to fail to insulate the wires, but I feel that such negligence is of no importance here, because negligence may form the basis of a recovery in tort only where the ultimate damage is such as should have been within the possible contemplation of the negligent party.

A clear understanding of the facts is necessary.

The deceased was working on a scaffold erected by himself. He was 50 feet above the ground and 15 feet above the roof trusses on which were located the wires in question. There was no way in which he could come into contact with the wires except by falling 15 feet from the scaffold to the wires on the roof trusses.

Roof trusses are so far apart that a person falling upon them will almost certainly fall through them. Thus, if a person situated as Freibert was, on a scaffold 15 feet above such trusses, should fall, it is almost certain that he will fall, not only 15 feet from the scaffold to the trusses, but also the 35 feet from the trusses to the ground.

Such a fall will almost certainly prove fatal. In fact, a fall of 15 feet from the scaffold to the trusses, even if the body remains on the trusses and falls no further, will produce most serious, if not fatal, results.

The evidence shows plainly that, when Freibert and the other workmen were painting the trusses, the current was turned off in the wires near them. My associates point to this as showing that defendant's officials realized the danger, and it is maintained from this that the current should have remained off even when Freibert was on the scaffold 15 feet above the wires. I believe, on the contrary, that the fact that the current was turned on when Freibert was on the scaffold indicates that every one realized that at that time there was no possibility of his coming into contact with those wires except as the result of a terrific fall—a fall which would almost certainly result in death, regardless of whether or not there was electric current in the wires.

I do not point to the fall of Freibert as contributory negligence on his part because contributory negligence was not pleaded, but I do point to it as indicating that, since only in that way could he have come into contact with the wires, defendant's officials were not negligent in failing to anticipate that he might come into contact with them at all.

Suppose a distributer of electric current is required by law to completely insulate all of its overhead wires, and suppose that a person falls out of an airplane, strikes the wire, and is burned to death, can the failure of the company to insulate the wires form the basis of a recovery? Manifestly not, because it could not have been contemplated that any one would fall from an airplane upon those wires. Such a fall would almost certainly cause death, regardless of the current in the wires. That is exactly the case here. I do not wish to be misunderstood. I concede that, if Freibert had been working near the wires, and if he had been careless and had touched them inadvertently or had reached out to steady himself and had come into contact with them, then the lack of insulation or the failure to cut off the current might have been considered as a negligent act such as might form the basis of recovery. But, where the negligent act could not possibly produce an accident except by the interposition of some totally unexpected force of such a nature as to be beyond the realm of possible expectation or foresight, then the original act of negligence is not the legal cause of the ultimate damage.

The rule for which I contend is well stated in the Law of Negligence by Sherman and Redfield, vol. 1, p. 58, § 29, where it is stated: "* * * A person guilty of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed (whether they could have been ascertained by reasonable diligence or not) would, at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind."

Cooley in his work on Torts (4th Ed.) vol. 1, p. 137, § 53, quotes with approval the following: "In determining what is proximate cause the true rule is that the injury must be the natural and probable consequence of the negligence, such a consequence, as under the surrounding circumstances of the case might and ought to have been foreseen by the wrongdoer as likely to flow from his act."

In the American Law Institute's Restatement of the Law of Torts, vol. 2, p. 816, is found the following: "If the actor's conduct has created a situation, which is harmless if left to itself but is capable of being made dangerous to others by some subsequent ac-

tion of a human being or animal or the subsequent operation of a natural force, the actor's negligence depends upon whether he as a reasonable man should recognize such action or operation as probable. The actor as a reasonable man is required to know the habits and propensities of human beings and animals and the normal operation of natural forces in the locality in which he has intentionally created such a situation or in which he knows or should realize that his conduct is likely to create such a situation (see Sec. 290). In so far as such knowledge would lead the actor as a reasonable man to recognize a particular action of a human being or animal or a particular operation of a natural force as, customary or normal, the actor is required to anticipate and provide against it. The actor is negligent if he intentionally creates a situation, or if his conduct involves a risk of creating a situation, which he should realize as likely to be dangerous to others in the event of such customary or normal act or operation (see Sec. 303)."

The point which I made is this, that the intervening act of the human being in this case, to wit, the fall of Freibert, was not such as a reasonable person would recognize as within the realm of probability. Had the wire been very close to the scaffold on which Freibert was working, then it would have been within the realm of possibility that he might have reached out carelessly and touched it.

This rule was approved in Shalley v. New Orleans Public Service, Inc., et al., 159 La. 519, 105 So. 606, 607, in which it was held that the sewerage and water board was guilty of actionable negligence in placing certain large iron pipes near the tracks of the local street railway company, and that there could be recovery by a person standing on the steps of a car preparatory to alighting, because it, the sewerage and water board, "in placing the pipes near the track as indicated, must be charged with having full knowledge that passengers on the street cars who intended to get off at the ensuing stop would take their position on the steps at such a distance from the stopping place of the car."

In none of the many cases cited in the majority opinion is there anything contrary to the views which I have expressed.

Clements v. Electric Light Company, 44 La. Ann. 692, 11 So. 51, 52, 16 L. R. A. 43, 32 Am. St. Rep. 348, a case relied upon in the majority opinion, indicates this distinction which I seek to make. There the court said: "It

was the duty of the company, * * *. to see that their lines were safe for those * * * *in close proximity to them.*" (Italics mine.)

In Potts v. Shreveport Belt Railroad Company, 110 La. 1, 34 So. 103, 105, 98 Am. St. Rep. 452, it was stated that the duty to use necessary care and prudence with reference to such wires extends to "places where others may have the right to go either for work or pleasure." There was certainly no duty to Freibert under the circumstances shown here, because it could not possibly be contemplated that he would fall from the scaffold, a distance of 15 feet, to the wires. In other words, to use the language of the Potts Case, he had no right to go where he was, and it could not be expected that he would go there.

In Joyce on Electrical Laws, the distinction I made is set forth plainly. It is there said that the duty of maintaining such wires in safe condition extends in favor of those "who by their occupation are brought in close proximity to them."

In Walters v. Denver Consolidated Electric Light Company, 12 Colo. App. 145, 54 P. 960, 961, the court said: "We may concede that at places where there is no apparent possibility of injury ensuing from electric wires it would not be negligence to leave them uncovered."

In Hebert v. Lake Charles Ice, Light & Waterworks Co., 111 La. 522, 35 So. 731, 734, 64 L. R. A. 101, 100 Am. St. Rep. 505, the language of the decision sets forth the distinction. There the court said that the electric light company was bound to use the very highest degree of care to avoid injury "to every one who may be lawfully in proximity to its wires, and liable to come accidentally or otherwise in contact with them."

In Bujol v. Gulf States Utilities Company (La. App.) 147 So. 545, 546, 547, it was said that "the duty to insulate does not extend to the entire system or to parts of the line where no one could reasonably be expected to come in contact with it."

The distinction I make is again plainly set forth in Ryan v. St. Louis Transit Company, 190 Mo. 621, 89 S. W. 865, 868, 2 L. R. A. (N. S.) 777, in which the court said that such a company must maintain its wires in safe condition for those who "work in their vicinity," and in that case, which is much relied on in the majority opinion, the court said that the company under such circumstances was "bound to anticipate that these workmen, while in the course of their employment, would touch or come in contact with

these cables." Such is not the case here. When the workmen were in proximity to the wires the current was turned off. It was only when they were on the scaffold 15 feet above the wires that the current was again turned on.

I see no necessity to refer in detail to each case cited in the majority opinion. In every one of them there is clearly pointed out the distinction between the duty to those who may be expected to come into proximity with such wires and the duty to those whose presence near the wires could not possibly be foreseen. There are, however, two additional cases cited by my associates to which I desire to refer. They are Birsch v. Citizens' Electric Company, 36 Mont. 574, 93 P. 940, and Williams v. Springfield Gas & Electric Company, 274 Mo. 1, 202 S. W. 1.

In the opinion rendered by my associates the Birsch Case is referred to as one in which "a hod carrier slipped and fell from a scaffold and in falling came in contact with a heavily charged wire." The facts of that case as stated in the decision itself are: "It was raining, and the scaffold, boards, and tools were wet. In the act of performing his work the plaintiff stepped upon the mortar board and slipped. Apparently he involuntarily threw out his hands to save himself or restore his equilibrium, when his left forearm came in contact with the heavily charged wire. He became at once insensible and fell to the ground and upon a pile of rock."

Had Birsch fallen from the scaffold to wires below, the situation would have been exactly the same as that presented here, but no such thing occurred. The wires were only 2 feet above him and less than 4 feet away from him, and in attempting to steady himself he involuntarily threw out his hand and struck the wires. That situation in no way resembles the situation presented in this case.

In the Williams Case an electric light company was held liable for damage caused to a boy who climbed into a tree and, when a branch broke, fell against an uninsulated wire. But the facts of that case plainly distinguish it from the case at bar. There the court said that the tree was one which children could and did easily climb, and that the insulation of wires in and near the tree had been in bad condition for more than a year. A building had been under construction very near the tree for some months, and children had formed the habit of climbing to the top of the building by using the tree. The

uninsulated wire "was 36 inches from the end wall and 12 inches from the edge of the cornice." Manifestly, it would have been reasonable to expect that, through carelessness, one of these children might reach out and touch the wires. The court recognized that "a company stretching electric wires in a city, through trees like the evidence tends to show the tree in this case to have been, must take notice of boyish impulses and anticipate the presence of children in such trees."

I again refer to the fact that the record shows that the defendant company's employes did not fail to cut off the current when Freibert and his coworkers were working near to these wires. It plainly appears that they did so and that the current was turned on only after they had left the immediate vicinity of the wires and had assumed a position from which they could not possibly come into contact with them except by a totally unforeseen and entirely unexpected accident.

I do not believe that the defendant company is liable under such circumstances.

I therefore respectfully dissent.