## JOHN SALMON, Plaintiff in Error, v. KANSAS CITY.

### In Banc, March 1, 1912.

1. **NEGLIGENCE:** *Employee of Sewer Contractor: Powers of Supervision Reserved by City: Liability of City for Independent Contractor's Negligence.* Powers of supervision and control as to quality of material and methods of construction reserved to the city engineer in a contract for the construction of a sewer, which specified at length and in detail the work to be done and materials to be used, and required all materials and labor to be furnished and paid for by the contractor, who was to be paid for a completed sewer a lump sum, were reserved to protect the interests of the city, and not in the interest of the contractor or his servants, nor for their protection, and neither the contractor nor his servants have any ground of complaint because the city failed to exercise such power of supervision; nor could an employee of the contractor, engaged in drilling holes to be charged with dynamite and giant powder by the contractor's foreman, look to the city inspector to protect him from unexploded charges; and if the foreman was guilty of negligence in not informing him that the dynamite in a certain charged hole had not exploded, and in consequence he was injured, he cannot hold the city liable for the foreman's negligence and his consequent injuries, on the theory that the city engineer had very extensive powers of supervision and control over the manner of performing the work. Such reserved powers of control did not authorize the engineer to step in between the contractor and his servants, and direct the servant in the details of his work.

   *Held,* by BOND, C., dissenting, with whom VALLIANT, C. J., and KENNISH and BROWN, JJ., concur, that the relation of independent contractor did not exist unless (1) the city selected a competent and fit person, engaged in an independent calling, to do the work; unless (2) the work committed to the contractor was not attended with danger to others, nor unlawful; and unless (3) the contractor was allowed to do the work according to his own methods and only subject to control by the city as to the result of the work. And as the petition charges that the contractor was not competent, skillful or fit, that the blasting of rock in excavating for the sewer was attended with danger to others, and that the contractor was not permitted to do the work according to his own methods, it states a cause of action against the city for the injury to the contractor's servant due to the negligence of his foreman.

2    ———: ———: ———: **Power to Direct Discharge of Incompetent Workmen.** Nor did a privilege reserved by the city to require the contractor to discharge incompetent workmen prevent the full application of the doctrine of independent contractor, or make the city liable for the injury of one of the contractor's servants due to the negligence of his foreman. Such provision in the contract was inserted to enable the city to secure good work at the hands of competent workmen; not to protect workmen against incompetent foremen.

3.   ———: ———: **Liability of City for Injury to Independent Contractor's Servant: Blasting on Public Street: Intrinsically Dangerous.** Holding in view the rule of law that a municipality cannot authorize acts upon a public street which are intrinsically dangerous and which in themselves constitute a nuisance or a menace to the lives and property of others, and that it is no defense to the liability of the city to show that the performance of the inhibited act is delegated to an independent contractor, it is nevertheless *held* that the protection of the rule does not extend to an employee of an independent contractor who is compelled in excavating for the sewer to use dynamite in blasting rock, nor is blasting so intrinsically dangerous that when the city authorizes its use by an independent contractor it becomes liable for resulting injury. The doctrine is applicable to injuries to passers-by or near-by property. It certainly cannot be invoked to hold liable the city when the injury to the servant of the independent contractor was due to the sheer negligence of the contractor's foreman in failing to protect the servant in work which in itself is not inherently dangerous, namely, in permitting the servant to return to drilling holes without discovering and notifying him that the dynamite in one of the holes of a previous charge had not exploded.

   *Held*, by BOND, C., dissenting, with whom VALLIANT, C. J., and KENNISH and BROWN, JJ., concur, that the contractor is not an independent contractor if he is an incompetent and unfit person, and where he is incompetent and unfit the city is liable for any injuries due to his incompetence, and that the rule applies to injuries to passers-by and to servants of the *pseudo*-contractor, and its protection extends to the one as well as to the other.

   *Held*, also, that the use of dynamite in blasting is intrinsically dangerous, and the city is responsible, as for its own negligence, if it fails to see that the contractor uses such care as the hazard requires.

4.   ———: ———: ———: **Incompetent Contractor.** The city owes no duty to the servant of an independent contractor with

whom it has contracted for the construction of a sewer, to provide him a competent and skillful employer. It is no ground for holding the city liable for the servant's injury that the contractor (his employer) was incompetent, or insolvent, and known to the city to be so.

*Held*, by BOND, C., dissenting, with whom VALLIANT, C. J., and KENNISH and BROWN, JJ., concur, that the city does owe to the servant engaged by a contractor to work on a city sewer, the duty to let its contract to a competent and skillful person, and if it fails in that duty it is liable for any injury to such servant due to the negligence of such incompetent contractor or of his foreman.

5. ———: ———: ———: Failure to Enforce Ordinance: Blasting by Person Not Licensed. A city is not liable in damages for failure to enforce its ordinances. Liability against the city for injury to the servant of an independent sewer contractor, who was injured by the unexpected explosion of a charge of dynamite used in blasting, cannot be predicated upon the city's failure to enforce an ordinance requiring a license to qualify one to do blasting.

*Held*, by BOND, C., with whom VALLIANT, C. J., and KENNISH and BROWN, JJ., concur, that for negligence and breach of duty in failing to require the observance of its ordinance safeguards against injury, which it contracted should be observed, the city is liable. Where the city's contract with the contractor for a district sewer stipulated and covenanted that each and all of its ordinances applicable to the doing of the work should be complied with, including the ordinance regulating blasting and requiring that only competent and licensed persons should engage in that hazardous work, that obligation inured to the benefit of all persons who would be injured by its breach, and the city is liable to any person injured as a result of the neglect of that duty. Such a cause of action, being based on negligence and a breach of contract, is a very different thing from one originating in a non-enforcement of a police regulation.

Appeal from Jackson Circuit Court.—*Hon. H. L. McCune*, Judge.

AFFIRMED.

*N. F. Heitman* for plaintiff in error.

(1) The law is strongly and intelligently stated in the leading case of Linnehan v. Rollins, 137 Mass.

123. The same principle is applied in Scott v. Springfield, 81 Mo. App. 312. The power of control is the cause, the liability of the city is the effect. Liability follows control. An interesting case in point is the City of Chicago v. Dermody, 61 Ill. 431. Joliet v. Harwood, 86 Ill. 110, is a blasting case. The opinion has been approved and followed in Illinois, and the case has been cited with approval in Massachusetts. Harding v. Boston, 163 Mass. 14. The case was approved in Jefferson v. Chapman, 127 Ill. 444; Gas Co. v. Myers, 168 Ill. 146; Chicago v. Murdock, 212 Ill. 12; Harper v. Milwaukee, 30 Wis. 365. This last case decides that the fact that the sewer was to be constructed under a contract will not relieve the city from liability if the contractor acted as its agent and subject to its control as to the mode of performing the work. If a public work is constructed under an independent contract (lawfully entered into by the city) the municipal authorities having no control over the mode of doing the work of blasting, then the contractor alone would be liable for such injury. (2) The relation of master and servant exists where the city may select the blasting workmen, and may order not only what blasting work shall be done but the mode and manner of performance. This contract uses this language: Blasting "work to be done in strict obedience to the directions which may from time to time be given by the city engineer or his authorized agents." The Construction Company was not an independent contractor. The word "independent" means "independent" and not "dependent." (3) The contract in this case provides that the contractor should obey all of the ordinances of Kansas City pertaining to the work of blasting. One of these ordinances requires a licensed blaster on the work. Although the city had perfect power of control over this matter of requiring an expert blaster, it neglected to exercise such power of control and

neglected to compel obedience to said reasonable ordinance which became a part of this contract. This negligence of the city was the cause of the injury. The failure to have an expert blaster was a divergence from the contract just as in the Illinois case cited. Another provision of the contract was: "The contractor shall not blast any rock or allow the same to be done on this work without taking such precautions as shall prevent damage and injury to person." The city retained power of superintendence over the blasting and the city had the power to compel the contractor to take precautions to prevent injury to the plaintiff, and had the power and the duty to compel the employment of a licensed blaster. The city negligently permitted a divergence from the contract in this respect. This case is therefore like the Illinois case. The city is not liable for non-enforcement of its ordinances as a general rule, but there is an exception to this rule, and this case comes within the exception, for the reason that in the Donohue case in 136 Mo., sewer construction is held to be the private business of Kansas City, and hence when engaged in that sort of business its ordinances establish a standard of care for it, just like the rules and regulations of the railroad company established a standard of care for the railroad company in the case in 84 Mo. App. The general rule is unquestioned; the exception is just as distinct and clear. Jones v. City of New Haven, 34 Conn. 1; Dickinson v. Boston, 188 Mass. 595; Commissioners v. Parks, 155 Mass. 531; Jones v. City of New Haven, 34 Conn. 1; Cooper v. Seattle, 16 Wash. 462; Fink v. St. Louis, 71 Mo. 52; Springfield v. LeClaire, 49 Ill. 476; Chicago v. Murdock, 212 Ill. 12; Wagner v. Rock Island, 146 Ill. 139; Fink v. St. Louis, 71 Mo. 52; Cooper v. Seattle, 16 Wash. 462; Harper v. Milwaukee, 30 Wis. 365; Logansport v. Dick, 70 Ind. 65; Ray v. Poplar Bluff, 70 Mo. App. 252; Jones v. New Haven, 34 Conn. 1.

*John G. Park, John T. Harding, Hunt C. Moore, A. F. Smith* and *Francis M. Hayward* for defendant in error.

(1) The general rule as to third parties is that one who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work, not in itself unlawful or attended with danger to others, according to the contractor's own methods and without his being subject to control, except as to the results of his work, will not be answerable for the wrongs such contractor, his subcontractor or his servants committed in the prosecution of such work. 2 Thompson on Negligence, sec. 22, p. 899; Gayle v. Foundry Co., 177 Mo. 446; Crenshaw v. Ullman, 113 Mo. 633. (2) The Construction Company, under the contract set forth in plaintiff's petition, was an independent contractor and though the city had the right to supervise the work, to see it complied with the contract, yet such company represented the employer only as to the result of the work and not as to the means by which it was accomplished. Blumb v. Kansas City, 84 Mo. 112; Crenshaw v. Ullman, 113 Mo. 633; McGrath v. St. Louis, 215 Mo. 211; Ege v. Brick Co., 118 Mo. App. 630; Hobbitt v. Railroad, 4 Exch. 244; Edmundson v. Railroad, 111 Pa. St. 316; Staldter v. Huntington, 153 Ind. 354; Uppington v. New York, 165 N. Y. 222; Frolich v. New York, 199 N. Y. 66; Pioneer v. Hanson, 176 Ill. 100; Casement v. Brown, 148 U. S. 622; Smith v. Milwaukee, 91 Wis. 360; Louisville v. Cheatham, 118 Tenn. 160; Harding v. Boston, 163 Mass. 14; Rogers v. Railroad, 31 S. C. 378; Callan v. Bull, 113 Cal. 593. (3) There is no allegation in plaintiff's petition that said company was an unskillful or incompetent corporation only that it was insolvent and, therefore, an improper corporation to enter into a contract with the city, but an incompetent independent contractor will not as to his employee

take the case out of the general rule. Schip v. Brewing Co., 64 Minn. 22; Hunt v. Railroad, 51 Pa. St. 474. (4) Blasting, under the circumstances of this case, is not so intrinsically or necessarily dangerous to third persons as to make the case at bar an exception to the general rule. 12 Am. & Eng. Ency. Law (2 Ed.), 512; 16 Am. & Eng. Ency. Law (2 Ed.), 208; 19 Cyc. 9; 26 Cyc. 1556; McCafferty v. Railroad, 61 N. Y. 178; Blumb v. Kansas City, 84 Mo. 112; Edmundson v. Pittsburg, 111 Pa. St. 316; French v. Vix, 143 N. Y. 90; Symons v. Road Directors, 105 Md. 254; Houghton v. Loma, etc. Co., 152 Cal. 500; Kendall v. Johnson, 51 Wash. 477; Tebbitts v. Knox, 62 Me. 437; Cuff v. Newark, 35 N. J. L. 512; Staldter v. Huntington, 153 Ind. 354; James v. McMinimy, 93 Ky. 471; Wetherbee v. Partridge, 175 Mass. 185; Louisville v. Smith, 134 Ky. 47. Petition alleges that the work was not intrinsically dangerous. Duty of making a place safe in blasting operations is delegable. Knorpp v. Wagner, 195 Mo. 637. (5) An employee of an independent contractor cannot recover from the employer of the contractor, even if the work whereby he is injured is intrinsically dangerous. Peoria v. O'Connor, 149 Ill. App. 598; Foster v. Chicago, 197 Ill. 264, 64 N. E. 322; Smith v. Railroad, 151 N. C. 479; Avery v. Railroad, 133 N. C. 130; Reiley v. Chicago, 122 Ia. 525; Engher v. Seattle, 40 Wash. 72; Brantrator v. Keokuk, 108 Ia. 377; Hanna v. Chattanooga, 88 Tenn. 310; Schip v. Brewing Co., 64 Minn. 22. (6) The plaintiff's injury was not due to blasting as such, but to the failure to inspect the charges unexploded, and, therefore, collateral to the work and he cannot recover. Butler v. Hunter, 7 Hurl. & N. 826; French v. Vix, 143 N. Y. 90, Samuelson v. Cleveland Co., 49 Mich. 164; Lafferty v. Gypsum Co., 83 Kan. 349; Water Co. v. Ware, 16 Wall. (U. S.) 566; B. & I Co. v. Ballard, 53 Tex. Civ. App. 110; Dill., Mun. Corp. (3 Ed.), 1030. (7) The city was under no obligation to enforce its own ordinances and

no cause of action arose in favor of plaintiff because of such failure. Moran v. Pullman Co., 134 Mo. 651; Loth v. Theater, 197 Mo. 328; Ryan v. Kansas City, 232 Mo. 471.

FERRISS, J.—Appeal from a judgment of the circuit court of Jackson county sustaining a demurrer to the petition filed by plaintiff charging negligence resulting in personal injuries. The petition was filed on the 15th day of July, 1905, and covers nearly thirty printed pages. The suit was filed against Kansas City and Robert J. Boyd Paving & Construction Company, but subsequently dismissed as to the Construction Company.

It appears from the petition that on the 13th day of May, 1901, Kansas City entered into a contract with the Construction Company for constructing a district sewer in said city by said company. In the course of the ensuing work plaintiff was employed by the Construction Company as a common laborer, and was engaged in drilling holes for blasting rock which was encountered in the work of excavation. The petition charges that the method of preparing the blasts was as follows: The drillers, of whom plaintiff was one, would drill a series of holes about two feet apart, after which such holes would be loaded with giant powder or dynamite by one Kelleher, foreman, and one Moriarity, designated as the powder man, employees of the Construction Company, who would then shoot said holes by means of fuses; that it was usual and customary to count the number of holes in a given series before exploding same, then count the explosions to see whether they corresponded with the number of holes, and afterwards to inspect and examine the holes so exploded for missed shots; that the plaintiff and his gang had nothing to do with the loading or exploding of the holes, nor with the subsequent inspection, but that after the holes had been exploded and inspected plain-

tiff and his gang would be ordered to drill another series of holes; that on the afternoon of Saturday, July 13, 1901, a series of holes which had been drilled by plaintiff were attempted to be exploded by the said foreman and powder man; that on the following Monday plaintiff and his gang were ordered by foreman Kelleher to go back to the place where such series of holes had been exploded to drill a new series; that one hole of the former series remained unexploded, and that while at work drilling the new series a driller who was working near plaintiff caused said unexploded shot to be exploded with such force and violence as to seriously injure the plaintiff.

The plaintiff makes the proper averments to negative any contributory negligence on his part.

There seems to have been no controversy as to the liability of the Construction Company for the negligence of its superintendent. The real controversy in the case is whether Kansas City is liable. The petition proceeds upon the theory that because of the power of control reserved in the contract to the city's engineer, the Construction Company was not an independent contractor, and, hence, the city is liable. In stating below the substance of the petition, we adopt the italics as they appear in the abstract filed by plaintiff. We do not apprehend that these italics appear in the original contract, but use them because they indicate the parts of the contract on which the plaintiff particularly relies.

Plaintiff alleges that the city ordered the construction of the sewer; sets out certain ordinances of the city which provide for the appointment of a city engineer whose duty it should be "to supervise the construction of public and district sewers;" also to prepare plans, specifications and estimates of the cost of all public and district sewers ordered by the council; to report to the board of public works all violations of any contract; to sign all contracts on behalf of the

city for public improvements, and to superintend their execution. The petition sets out section 883 of the Revised Ordinances of Kansas City for 1898, as follows:

"Permit for Blasting:—No person shall do or cause to be done any blasting within the city limits without *first obtaining from the city engineer a permit therefor,* which shall be issued only on condition that the *city engineer* is satisfied that the applicant is in every particular a safe, careful and suitable person to use, and an expert in the use of, all explosives used in blasting, but *no permit shall, under any circumstances, be issued to any one* until the applicant therefor has entered into a bond to Kansas City in the sum of not less than one hundred dollars or more than ten thousand dollars, as the city engineer may require, with at least two securities, to be approved by the city comptroller, conditioned that *such person will carefully and prudently use such explosive,* and will pay any and all damages caused *any person* by the use thereof. And *any person* can sue on such bond in his own name for any damage caused him by the *use of such* explosive."

The petition sets out *in haec verba* the contract between the city and the Construction Company. This contract is extremely lengthy, is in the usual form of municipal contracts for public works, giving specifications as to the character of the work to be done, materials to be used, all under the supervision of the city engineer. The contract provides that the party of the first part (the Construction Company), having made the lowest bid, agrees to complete the work in a substantial and workmanlike manner, "in conformity with the plans of such work on file in the office of the city engineer of Kansas City, *in strict obedience to the directions which may from time to time be given by said city engineer* or his authorized agents, in accordance with the following specifications." The specifica-

tions provide: *"The contractor shall not blast any rock or allow the same to be done on this work without taking such precautions by covering or otherwise as shall prevent damage or injury to person or property;"* that streets and alleys shall be restored *"to the satisfaction of the engineer,"* surplus earth to be removed to such distance *"as may be designated by the engineer;"* the foundations of the sewer to be either of broken stone, plank, concrete or masonry, as shall be *"ordered by the city engineer;"* the location of manholes and catch basins to be changed, or omitted altogether, *"if deemed best by the city engineer;"* no broken bricks to be allowed, "except for closures, or as shall be *otherwise specially directed."* Then follows a specification as to the character of cement to be used, providing certain tests to be conformed to, "except in such portions of the work as *the city engineer may otherwise direct."* The character of the concrete is specified, also the manner of preparing it, "unless *otherwise ordered by the city engineer;"* house connections to be worked into the brick work *"in such manner as the engineer may direct;"* the masonry work to be suspended during the freezing weather, "but *the city engineer shall have the right to direct* that the work shall be continued under such conditions *as he shall prescribe;"* also that during a suspension of the work from any cause, the same shall be suitably covered and the trenches filled *"if the engineer so directs;"* the syphon trap used to be satisfactory *"in the opinion of the city engineer."* Then follows a specification as to maintenance; the sunken trenches to be immediately filled, and if on a paved street, the pavement to be repaired by the contractor at his expense, *"on receipt of notice from the city engineer so to do;"* that if the contractor fails to comply with said *"notices from the city engineer for two days, then the city may cause the work* of grading" to be done. Then follow some general specifications: "2. The

first party shall commence work at such points as *the engineer may direct,* and shall conform to *his directions* as to the order of time in which the different parts of the work shall be done, as well as to *all his other instructions as to the mode of doing the same.*" The next paragraph provides that if the contractor is not present, orders shall be given to the superintendents in charge, and by them received and obeyed, and that "if *any person employed* on the work shall refuse or neglect to *obey the directions of the engineer,* or his duly authorized agents, in *anything* relating to the work, *or shall appear to the engineer to be incompetent, disorderly or unfaithful, he shall upon the requisition of the engineer be at once discharged and not again employed on any part of the work.*" It is further provided that "*the engineer shall be the judge*" of any work that may be included in the contract by implication; also that the contractor shall do such extra work as "*the engineer may specially direct,*" and that if the price for same is not stated in the contract, the price *shall be fixed by the engineer;*" next, that the contractor shall, "upon being so *directed by the engineer,*" remove, rebuild or make good, at his own cost, any work which the "*latter shall decide to be defective.*" The work is to be begun within ten days unless "*the engineer shall specially direct otherwise* in writing." Provision No. 8 is, that, if "*in the opinion of the engineer*" the work is not being prosecuted with sufficient force, the engineer may notify the contractor to employ such additional force "as *he deems sufficient,*" and upon failure to comply with such notice, "*the engineer may put on such additional force* at the cost of the first party; or *he may, at his option, declare this contract annulled;* and the *power is reserved to the city engineer* by Kansas City to *suspend or annul* this contract, or to suspend the doing of any work thereunder," for any failure on the part of the contractor to fulfil same, and the decision of the engineer

is to be conclusive. The contractor is required to observe all city ordinances in relation to obstructing the streets, maintaining signals, keeping open passage- way and protecting same, "and *generally to obey all laws and ordinances controlling or limiting those engaged on the work.*" Then follows a clause by which the contractor agrees to indemnify the city and save it harmless on account of any injuries or damages received or sustained by any party or parties by the acts of the contractor. Next is a provision that "the city engineer shall, in all cases, determine the amount and quality of the several kinds of work" to be paid for, and that "he shall decide all questions which may arise relative to the execution of the contract," and that "his estimates and decisions shall be final and conclusive." It is further provided that the contractor *"is subject to the city charter and ordinances in general."* Then follows the agreement as to prices to be paid for the work, among others, "for each cubic yard of *solid rock excavated;*" then a provision that no payment is to be made until the work has been completed *"to the satisfaction of the city engineer,"* and that there will be used brick only which has been approved *"by the city engineer."*

This contract was entered into by the Construction Company, as party of the first part, the National Surety Company, party of the second part, and Kansas City, party of the third part; the National Surety Company being surety for the contracting company for the faithful performance of the contract. The said party of the second part agreed *"that the said party of the first part will well and faithfully perform each and all of the terms and stipulations* in the foregoing contract;" and further agreed that the work was to be begun within ten days, "unless *the city engineer shall specially direct* otherwise." The contract is signed by the city engineer on behalf of the city, and was duly approved and confirmed by the city council.

The petition, after reciting the contract, proceeds to aver that the work of constructing said sewer was commenced and prosecuted by *defendants*, and that the defendants and each of them had in their employment, and under their superintendence and control, a gang of men to which plaintiff belonged, and that the foreman, Kelleher, was a vice-principal of defendants.

The various specifications of negligence charged against the city are scattered through this lengthy petition in a somewhat confused and inconsequent manner. We have, however, carefully analyzed the same, and find the specifications of negligence may be stated as follows:

1. That the defendants knew, or might have known by the exercise of due care, that there was an unexploded shot in one of the drill holes, but that they negligently and carelessly failed to remove said danger or to warn plaintiff thereof, and negligently ordered plaintiff and his gang to go to said place and drill a new series of holes in close proximity to said unexploded charge.

2. That the injury to plaintiff resulted from the immediate carelessness and negligence of the foreman, Kelleher, and the powder man, Moriarity, who were working under the direction and control of the defendants; that they were not safe, careful or suitable persons for the performance of their duties; were not experienced, and were not competent; that the defendants knew of such incompetency, and were negligent in entrusting them with the work, and that defendants knew that Moriarity was utterly incompetent.

3. That the defendants negligently and carelessly failed and refused to obey the terms of section 883 of the ordinances, set out above, and that they carelessly and negligently violated said ordinance, in that they failed to compel a compliance with said ordinance, which required them to employ expert licensed blasters; that the blaster employed by them was incom-

petent and non-expert, and had no license; that it was within the power, and it was the duty of the city, in the exercise of its reserve power and control over the work, to see that no person should be permitted to do said work of blasting except one qualified under said ordinance, and that the blaster who was employed had not qualified under said ordinance.

4. That the city reserved and had the power to direct and control the manner of performing said work of blasting, and to direct and control all the workmen, and was careless and negligent in failing to exercise such power and control, and negligently caused the same to be done without reasonable care and prudence, and that the defendants were negligent in failing to superintend and control the manner of performing said work of blasting in all its details; that the engineer had the power and authority to control and direct all the workmen as to the manner of doing the work, and especially the manner of doing said work of blasting, but negligently failed to exercise such control.

5. That said series of holes to which said unexploded shot belonged was excessively, unusually and unreasonably large in number, and that the foreman and powder man were negligent in attempting to explode same at one time.

6. That the defendants were careless in failing to provide and use on said job reasonably safe explosives or safe and suitable fuses.

7. That defendants were negligent in failing to provide said foreman and powder man with proper, usual and reasonable tools and instruments with which to search and examine for unexploded powder.

8. That defendants negligently failed to provide said foreman and powder man with proper, usual and reasonable tools and instruments for cleaning out old drill holes and removing powder from unexploded

charges or missed shots, and failed to provide any tools or instruments whatever for said purpose.

9. That the Construction Company was at the time of entering into said contract a corporation organized under the laws of Missouri; that it was an insolvent and irresponsible corporation, and was not a fit, proper or suitable corporation for the city to enter into said contract with, and that said defendant city was negligent and careless in entering into said contract with said Construction Company, in that said company was an insolvent, irresponsible company, and not a fit, proper or suitable corporation for said work, and that the defendant city, at the time of entering into said contract, and throughout the performance of said work, had knowledge of the foregoing facts, or by the exercise of ordinary care would have had knowledge thereof.

10. That said engineer had authority and power to cause the discharge of all incompetent, disorderly and unfaithful servants engaged on said work, and was negligent in failing to cause the discharge of said foreman and powder man, and, further, in failing to cause the selection and employment of a qualified blaster—one qualified under the terms of section 883 of said ordinance.

11. That the defendants and each of them failed to use reasonable care to provide plaintiff with a reasonably safe place in which to work, and negligently failed to use reasonable care to keep said place of work reasonably safe.

It is further averred in said petition that explosives could be used for blasting in said sewer only by an expert, and that such work required special ability, skill and training; that said unexploded charge was not a risk necessarily incident to said employment; that it was a danger which "could have been obviated by the adoption of reasonable measures of precaution by the defendant, and that the defendants negli-

gently failed to take usual and reasonable measures of precaution to guard plaintiff against said danger;" that the risk was not necessarily liable to happen on account of the nature of the business, and was not naturally incident to said employment, where reasonable care was used by the superintending powers to avoid the danger of such unexploded charges; that unexploded shots of that character "are not usual or ordinary risks in sewer construction business in Kansas City or elsewhere, where reasonable care was used by the superintending powers to avoid such danger." It is further averred that said risk was created and continued by the negligence and carelessness of the defendants, and could have been obviated, removed and avoided by the use of reasonable care on the part of defendants, which care defendants negligently failed to use; that "it was through the immediate negligence and carelessness of said foreman, Kelleher, and said powder man, Moriarity, that said unexploded shot was left existing unexploded, unsearched for and unremoved from said place."

It is apparent from reading the contract incorporated in the petition, and above abstracted, that the actual work of constructing the sewer was performed by the employees of the contracting company which, under the contract, furnished the labor and material; so that wherever in the petition the plaintiff speaks of the defendants, including the city, it is not intended to be asserted that the city was in actual, physical charge of the details of the work, but that by operation of law the employees of the contracting company were the servants of the city; so that, in so far as the pleader charges negligence upon the city, it is a legal conclusion.

The above specifications of negligence charged against the city, with the exception of numbers 3 and 9, may be grouped together for the purposes of this discussion. The liability of the city predicated upon

them is made by the plaintiff to rest upon two propositions: (a) That the control and direction of the work reserved to the city by the terms of the contract negative the theory that the Construction Company was an independent contractor so far as concerns the acts of negligence alleged to have caused the injury to plaintiff, and made the city directly responsible, as master, for such negligence; (b) that owing to the dangerous nature of blasting, the defendant city was under obligation, as a matter of law, independent of the terms of the contract, to see to it that proper precautions were taken to protect plaintiff. This latter proposition is not clearly developed in the petition, but it has been fully argued by both sides, and as the petition could be amended, if necessary, it is in the case and should be disposed of.

I. The petition proceeds upon the theory that under the contract between the city and the Construction Company, the city reserved the direction and control of the immediate acts which, because of their negligent performance, resulted in injury to plaintiff, and the city is therefore responsible for such acts.

As the material parts of the contract are set out *in haec verba* in the petition, the court will look to the contract itself and construe it according to its terms, regardless of the construction placed upon it by the pleader. Following settled rules of construction, we consider the circumstances of its creation, the object sought to be accomplished, and the terms of the entire instrument. So considered, does a fair construction of this contract sustain the contention of plaintiff? Counsel for plaintiff asserts in his brief as his basic propositions the following: "The contractor was not independent as to blasting. As to blasting, the contractor was subservient and was completely under the power of control of the defendant. As to blasting, the relationship of principal and agent subsisted be-

tween the city and the alleged contractor. The contractor was insolvent and incompetent, and had not qualified to do blasting, and had no person in its employ competent to do blasting. The defendant reserved and assumed absolute control over the blasting. Responsibility follows from the defendant's power of control over the blasting. Responsibility follows control."

Leaving the question of the alleged incompetency of the contractor for later discussion, we will consider the contract. It is in the usual form of contracts for municipal public works, specifying at length and in detail the work to be done and materials to be used, all material and labor to be furnished and paid for by the contractor, who is to be paid for a completed sewer a lump sum to be ascertained by the dimensions thereof. In order to secure a satisfactory job, the owner (Kansas City) reserves to its engineer large powers of supervision and control as to quality of material and the method or mode of construction. Obviously, however, these powers are reserved to protect the interests of the city, and not in the interest of the contractor or his servants, nor for their protection. Neither the contractor nor his servants would have ground for complaint should the city fail to exercise such power of supervision. The engineer assumed no duty to plaintiff by the terms of the contract. The plaintiff did not look to the city inspector to protect him from unexploded charges. His reliance was on the foreman employed by the contractor. The contract must be construed as a whole, not upon detached phrases which in themselves in a proper relation might be apt enough to sustain plaintiff's claim. Taken as a whole, it is plain enough that the powers given to the city engineer are solely for the purpose of securing compliance with the specifications provided in the contract. By no fair construction can the provision authorizing him to direct the mode of doing the work

be held to mean that it is his duty to step in between the contractor and his servant, and direct the latter in the details of his operations. The provisions emphasized by the pleader, taken as a whole, and considered in connection with the entire instrument, cannot modify the view above expressed. Fairly construed, such provisions do not prevent the full application of the doctrine of independent contractor to the Construction Company. The right to require the discharge of incompetent workmen is a privilege retained by the city for its protection. This provision is inserted to enable the city to secure good work at the hands of competent workmen; not to protect employees against incompetent foremen. The city has no power to discharge directly an employee of the contractor. A contract of this character was construed in Blumb v. City, 84 Mo. 112. In that case we said of a similar provision: "It did not give the engineer or the city the right to discharge them, and this permission had no reference to *the manner of doing the work,* but only to the workmanship, the character of the work and the quality of the materials used." The nature of such supervision reserved by the owner is aptly defined by the Supreme Court of Michigan in Samuelson v. Cleveland Iron Min. Co., 49 Mich. 164. In that case a mine owner let the operation of his mine to a contractor, who was to mine and deliver the ore to the owner at a specified price per ton. It would seem to have been conceded that the written contract created the relation of independent contractor. A miner employed by the contractor was injured by a falling roof, improperly supported. The employee sued the owner, and relied upon this clause in the contract: "The making of it (the mine) safe hereby devolving on said first parties (contractors) under the supervision, advice and direction of said superintendent" (for the owner). The court said: "The (mine) owner assumed towards no one the duty

241 Sup.—3

to supervise; he does not stipulate to supervise; he only contracts for a privilege. If the mine owner in this case had dismissed the superintendent and sent no one to inspect the working, no miner could complain that a duty owing to him was being neglected.'' Further, it was said that the inspection by the owner was for the purpose of protecting his own property. In the same case it was said that if the mine had been in an unsafe condition at the time it was handed over by the owner, he might have been liable on the theory that he invited others into unsafe premises without warning of the danger.

In the case at bar the contract does not authorize the city to give direct orders to the workmen. The city does not hire them nor pay them. The liability of the master for the negligence of his servant arises from the fact that he selects the servant with a view to his skill, and is therefore responsible for such selection. There is no such basis here for imputing responsibility to the city.

In the case of Carman v. Railroad, 4 Ohio St. 399 (cited by plaintiff), discussing whether the owner or contractor is liable, the court suggests this distinction: ''In the one case, the principal (owner) selects the servant or agent with a view to his skill and care, and not only retains the control over all his operations, but also has the power to dismiss him at any time for misconduct. In the other, the contractor assumes this position, leaving the employer no control over the work or the persons by whom it is executed, but simply the right to require the thing produced, or the result attained, to be such as the contract has provided for.''

A contract similar in general character to the one before us, but in some respects giving greater power to the engineer, was construed in Norwalk Gas Co. v. Borough of Norwalk, 63 Conn. 495. The petition sought to hold the borough liable for injuries result-ing from negligent blasting in the construction of a

sewer at the hands of a contractor. It was contended there, as it is here, that in regard to the blasting the contractor was not independent, and that by the reservation of control in the contract, the borough assumed the responsibility for the acts complained of, namely, the manner of blasting. The contract provided that certain rock should be excavated "with as little blasting as possible, and *under the immediate supervision and direction of the engineer* for the borough, or his assistant " (italics ours); that "if any person employed by the contractor on the work shall appear to the engineer to be incompetent or disorderly, he shall be discharged immediately on the requisition of the engineer." Commenting on this contract, the court says: "But on the whole we are inclined to think that the weight of authority upon the question justifies us in holding that the reservations of control, being but partial, and existing in certain respects only, did not prevent the existence of the relation of contractee and independent contractor; that the general control over the work, as to the manner and method of its execution, the oversight and direction of the performance of the actual manual labor, especially in the particulars in the execution of which the plaintiff claimed that the injury to its property was caused, notwithstanding the prescribed limitations, remained in the contractor; that the persons doing the work were his servants, not those of the defendant, and that these considerations relating to general control constitute the true test by which to determine whether the relation be that of employer and contractor or that of master and servant."

There is no claim in the petition in the case before us that the city, through its inspectors, in fact directed the acts which it is alleged caused the injury to plaintiff.

In Foster v. City of Chicago, 197 Ill. 264, it was insisted that the city was liable for an injury received

by a servant of the contractor engaged in excavating for a sewer, and due to improperly protecting the walls, on the ground that under the contract the city "remained in a position of control." The contract is not set out in terms in the report of the case, but enough appears to show the relation of what was said by the court to the question under discussion. The language of the court is so apt in this regard that we quote it at some length:

"It is true that the contractor agreed to perform all the work 'under the immediate direction and super-intendence of the commissioner of public works, and to his entire satisfaction, approval and acceptance,' but the work he agrees so to perform is that prescribed in the contract, and it is evident, we think, that this direction and superintendence relate to results—to the character of the workmanship—and not to methods, unless by the use of improper methods the character of the workmanship was rendered unsatisfactory. . . . The contract does not include the direction, management and control by the city of every detail of the work. The contractor was not required to take his orders, day by day, from the city. He was to be guided by the contract and the specifications constitut-ing a part thereof. He was not a mere servant and employee. He was an independent contractor, the city retaining such supervisory power as it might, from time to time, find it necessary to exercise to insure compliance with the contract and to obtain the result called for thereby. The contractor employed and paid his own laborers. The deceased was his employee. The difference between an independent contractor and a mere servant is not determined solely by the re-tention of a certain kind or degree of supervision by the employer. It is to be determined by the contract as a whole—by its spirit and essence—and not by the phraseology of a single sentence or paragraph. Be-ing a contractor, and not a mere servant of the city,

the latter cannot be held liable for his negligence in the performance of his work. . . .

"This is not a case where a party, when passing along or using a public street, has been injured because of the negligence of the city in permitting or causing a sewer to be constructed or other work to be carried on in such a street, creating a danger to passersby for which proper safeguards have been negligently omitted. In City of Springfield v. Le Claire, 49 Ill. 476, cited by the appellant's counsel, the question was whether there was a duty resting upon the city growing out of the franchise conferred upon it to keep its public streets in a safe condition for the passage of travelers and others having occasion to use them, and the question was properly answered in the affirmative. But the deceased in the case before us was not a passenger or a traveler over the street when injured, and there is no analogy between the case so cited, or others of like character referred to by appellant's attorneys, and the circumstances of the case at bar."

We rule against the plaintiff on the proposition that the contract reserved to the city the control of the acts complained of.

II. It is urged that even if the city is not liable by contract, it is still liable because of its failure to perform a duty to plaintiff imposed upon it by law; that blasting is so intrinsically dangerous that it becomes the duty of the city, when it authorizes its use in public work, to guard third persons, *including the servants of an independent contractor engaged in the work,* from the incidental danger. The industry of counsel for plaintiff in error has brought to our attention numerous cases, as well as conclusions of textwriters, recognizing that the law imposes upon municipalities and owners of property certain obligations toward others which cannot be escaped by interposing an independent contractor as the active doer of the

things complained of.  Owners have been held liable
to servants of a contractor for hidden intrinsic dan-
gers lurking in premises upon which others are in-
vited, without warning, to work.  [Clark v. Railroad,
234 Mo. 396; Young v. Waters-Pierce Oil Co., 185 Mo.
634; Ryan v. Transit Co., 190 Mo. 621; Calvert v.
Springfield Light Co., 231 Ill. 290.]  Also private own-
ers, and municipalities as well, have been held liable
for the consequences of acts which they have author-
ized and which are intrinsically dangerous to others,
no matter how carefully performed, where the dan-
ger arises from the act itself and not from the manner
in which it is done.  We have to do with the proposi-
tion last stated, and particularly as applied to the
liability of a municipality authorizing blasting in a
public street by an independent contractor.  The lia-
bility of the municipality and that of a private owner
rest upon the same fundamental proposition, namely,
that one must not authorize acts upon his property
which in themselves constitute a nuisance or a menace
to the lives or property of others; and it is no defense
to show that the performance of the inhibited act is
delegated to an independent contractor.  The city is
also under obligation to keep its streets safe for travel.

It is said that blasting is intrinsically dangerous,
and that therefore the city is liable for injury re-
sulting therefrom.  The doctrine as laid down in this
regard by the authorities is that the city cannot es-
cape whatever duty arises from the use of this danger-
ous agency by delegating the act to an independent
contractor.  As to the extent of the duty imposed upon
the city the authorities are not uniform.  It has been
held that this duty is to use due care only to prevent
injury.  [Booth v. Railroad, 140 N. Y.. 267.]  It has
also been held that in some instances, where blasting
is done in the street, the city is liable in any event,
and cannot defeat a recovery by showing due care.
We are not called upon to lay down an exact rule on

this point, because whatever duty the city owes it owes to the public and not to the servants of the contractor. This is not a case of imperfect appliances furnished by the city, nor one of inviting persons into premises unsafe at the time of the invitation. It is a case where liability is claimed because of the intrinsic danger attending the use of explosives. No text-writer and no case cited extends the protection of this doctrine to an employee of the independent contractor. We have examined the numerous cases cited by plaintiff to support the proposition that blasting is so intrinsically dangerous that when the city authorizes its use by an independent contractor, it becomes liable for resulting injury. We may concede that these cases properly declare the law without approaching the question involved in the case before us. All of the cases relied upon deal with injuries inflicted upon persons disconnected from the work, as for instance, passersby on the street or adjacent property-owners, and where the injury results from the violent expulsion of rock or earth incident to a blast. No man can tell where a rock hurled into the air without direction will fall, and therefore danger to persons and property in the vicinity is to be anticipated, and so far as possible to be guarded against.

The doctrine of the cases referred to has no reference to a servant of the contractor engaged in blasting; certainly not when, as here, the injury to the servant results from the sheer negligence of the contractor or his foreman in failing to protect the laborer in work which in itself is not inherently dangerous. The drilling of a hole for a charge of dynamite is certainly not an inherently dangerous task. The negligence of the foreman, which it is charged was the immediate cause of the injury, was not the natural and obvious result of blasting; so that even if the doctrine of cases involving the rights of outsiders be extended to the servant of the contractor, the servant in this case

would not come within the rule. It cannot be said that because the city is liable to adjacent persons and property, when it authorizes the use of an inherently dangerous agency (which is the doctrine of the cases relied on), therefore any employee engaged in the quarry may hold the city for any negligence of the contractor or his foreman. Counsel confuses the case of the servant of the contractor, who is injured by reason of the negligent manner in which the blasting is done, with the case of a third person on the street who is injured by the blast itself, without reference to the manner in which the blast is set free. In the latter case the injury results from violent expulsion upon the street and adjacent property of rock and earth authorized by the city. This expulsion of rock and earth occurs in the proper execution of the work. The plaintiff was not injured in the proper execution of the work, but solely by reason of the negligent manner in which it was performed, i. e., the negligent failure to detect the unexploded charge. It does not appear that the plaintiff was in any danger from the proper explosion of a blast. Indeed, such danger is expressly negatived in the petition, which avers that the danger was not a necessary one, nor incident to the work in which plaintiff was engaged.

In Missouri Valley B. Co. v. Ballard, 53 Tex. Civ. App. 110 (a case in point upon the facts), the servant of the independent contractor sued the owner. The court, after stating the general doctrine of liability of the owner to the public, says: "The exception within which the verdict of the jury has brought this case finds its best illustration in those cases where public streets have been made dangerous by excavations or otherwise, and where in the nature of things the safety of the traveling public has been endangered, unless needed precautions have been taken to prevent it. In such a case, as has been often said, the injuries are the direct result of the very thing which

the employer authorized to be done, and he cannot, therefore, escape liability by farming out the work to an independent contractor. It is in the nature of a nondelegable duty, owing to those whose life or limb is thus jeopardized. But where, as here, the injury is the result of an act or fault purely collateral to the work to be done, and is the result entirely of the wrongful act of the independent contractor or his workmen, the employer should not be held liable.''

If the owner directs the contractor to perform an act which is dangerous to others, even if carefully performed, he is liable to others for the consequences. In such case the injury results, not from the mode in which the act is done, but from the doing of the act by the most careful mode. The danger is incident to the act itself; hence, the owner is responsible for the consequences of the act. On·this principle rest the numerous decisions in cases where blasting throws rocks which cause damage. As was said by the Supreme Court of Arkansas in Railway v. Yonley, 53 Ark. l. c. 508: ''If one. employs another to perform a work which from its nature is necessarily dangerous to the property of a third person, the employer cannot escape liability for the injury thereby done. In such cases the injury flows from the doing of the act as its natural consequence, and not from the manner in which the act is done.'' But aside from the differential facts above referred to, the doctrine of liability of the city to outsiders, supported by plaintiff's cases, is not extended by either reason or authority to include the servant of the contractor. If the foreman himself had been injured by his own negligence averred in the petition, it would hardly be claimed that the city would be liable; yet the doctrine for which plaintiff contends would protect the foreman, or even the contractor himself, from the consequences of his own negligence. It would be a strange anomaly in jurisprudence were we to hold that an employer is

liable to the servant of an independent contractor because of the negligence of the contractor or his foreman in the performance of some casual act in the course of the work. The owner owes no legal duty to such servant to protect him from the negligence of his foreman. There is no parallel between the relation of the city to plaintiff and its relation to the public and adjoining owners. In the case of Loth v. Columbia Theatre Co., 197 Mo. 354, we refused to apply the doctrine of independent contractor where a passerby was injured by the lowering of a large sign, but we said: "The injury in the case at bar resulted directly from the acts called for and made necessary by the contract, that is, the changing and replacing of the sign, and not from the acts which were merely collateral to the contract, and if by the negligence and carelessness of the men handling the sign it fell upon and injured plaintiff, the company is liable as if it had directly performed such acts." But supposing the sign, through careless handling, had injured one of the workmen engaged in the work, would it be claimed that the owner was liable?

The true rule of liability is thus stated by Dillon in his work on Municipal Corporations, sec. 1723, vol. 4. "Where *the work contracted for necessarily constitutes an obstruction or defect* in the street, of such a nature as to render it unsafe or dangerous for the purposes of public travel, unless properly guarded or protected, the employer (equally with the contractor), where the injury results directly from the acts which the contractor engaged to perform, is liable therefor to the injured party. But the employer is not liable where the obstruction or defect in the street causing the injury is wholly collateral to the contract work, and entirely the result of the negligence or wrongful acts of the contractor, subcontractor, or his servants. In such a case the immediate author of the injury is alone liable."

The authorities cited by plaintiff are in line with this statement of the law. In Schip v. Pabst Brewing Co., 64 Minn. 22, a servant of the contractor sued the owner for injuries. He offered to prove that the contractor was incompetent and known to be so by the owner, also that the building being removed was in a dangerous condition. These offers were rejected by the trial court. On appeal, the Supreme Court says: "For the purposes of the case we will assume that plaintiff could have proved these offers, and was entitled to do so, if it would result in proving a cause of action against defendant. Counsel for appellant have cited no case which has held the owner liable to the servant of the contractor under such circumstances. There are many cases which hold that the owner of premises cannot, by employing a contractor, relieve himself from the continuing duty which he owes to the public and to the adjoining owners not to maintain a nuisance on his premises, or license any one else to do so. But we can find no case which holds that the owner owes any such continuing duty to the servant of the independent contractor engaged in the very work of abating the nuisance." See also latter paragraph of citation from Foster v. City of Chicago, supra, where it was held that the servant of the contractor could not recover from the owner.

In Peoria B. & C. Trac. Co. v. O'Connor, 149 Ill. App. 598, a laborer employed by the contractor for a street railway company sued the railway company for injuries received on account of a defective derrick rope used in hoisting an iron pole in the street. The court, after stating the rule that protects persons using the streets, said: "If appellee had been injured while using such public street or ground as a passer-by thereon, appellant could not have relieved itself of liability for its negligence in creating such condition merely because the construction company had failed to do its duty. Appellee when injured was not in the

exercise of his right as a citizen to use the public
street. There was no causal connection between the
negligence and the accident, and the particular place
where the same occurred. We are therefore of opin-
ion that the rule in question is inapplicable in the
present case." To the same effect, see Louisville &
N. R. R. Co. v. Smith's Adm'r, 134 Ky. 1. c. 60, where,
under similar circumstances, the court said: "Of
course, a different question would be presented if by
reason of the prosecution of this work a train had been
derailed, and a passenger injured; for in such case
the duty of the company to furnish the passenger with
safe passage is such that it could not excuse itself
for any negligent act on the part of an independent
contractor that in anywise impaired the safety of its
track, but no such question as that is presented here.
No such relation existed between deceased and the
railroad company. The railroad company was under
no duty to deceased, since the relation of master and
servant did not exist between them. The duty which
it owed to the traveling public to maintain its track
in a safe condition for the passage of its trains did
not in the least obligate it to look out for the safety
of deceased, who was an employee of an independent
contractor engaged in a separate and distinct under-
taking." Like rulings are found in Reilly v. Rail-
road, 122 Ia. 525; Engler v. Seattle, 40 Wash. 72;
Hanna v. Railroad, 88 Tenn. 310. The cases of Cov-
ington Bridge Co. v. Steinbrock, 61 Oh. St. 215, and
Wetherbee v. Partridge, 175 Mass. 185, on which
plaintiff strongly relies, are not in point, as they in-
volve injuries to outsiders or adjacent property. These
and other cases hold to the doctrine of Dillon v. Hunt,
105 Mo. 161. Scott v. Springfield, 81 Mo. App. 312,
held the city liable for injuries to a servant of the
contractor, but on the ground that the city retained
the actual control, and that, hence, the contractor was
not independent. And so it is with other cases hold-

ing the employer liable. These cases are not in point, in view of the construction which we have given above to the contract under consideration.

From the foregoing reasoning and authorities, it is clear that, even conceding that blasting is intrinsically dangerous, there would be no liability in this case, as a matter of law, on the part of the city to plaintiff for injuries caused by the negligence of the contractor's foreman.

III. It is claimed that the petition avers that the contractor was incompetent, and known to the city to be so. The charge in the petition falls short of this. Here it is: "That said Robert J. Boyd Paving and Construction Company was at the time of entering into said contract and still is a corporation, organized and existing under the laws of Missouri. That it was an insolvent and irresponsible corporation, and was not a fit, proper or suitable corporation for the city to enter into said contract with, and that defendant city was negligent and careless in entering into said contract with said Robert J. Boyd Paving and Construction Company, in that said company was an insolvent, irresponsible company, and not a fit, proper or suitable corporation for said work, and that the defendant city at the time of entering into said contract, and throughout the performance of said work, had knowledge of the foregoing facts, or by the exercise of ordinary care would have had knowledge thereof."

The unfitness alleged must be referred to the alleged insolvency. Furthermore, for reasons given above, a charge of incompetency would not help plaintiff. The city owes no duty to the servant of the contractor to provide him a competent and skilful employer. In Schip v. Pabst Brewing Co., supra, the court (l. c. 25) said: "Neither has our attention been called to any case where the owner was held liable on

the sole ground of failing to exercise with due care a temporary duty of employing a competent contractor (after which his responsibility would cease), but in every case there was a continuing duty not to maintain a nuisance on his premises himself, or license others to do so. It is often laid down as one of the conditions required to relieve the owner from liability that he shall employ a competent contractor. But this language (where it is not mere dictum) is always used in cases where the owner owes such continuing duty, and the work to be performed by the contractor will necessarily result in a nuisance to the public or the adjoining owner, unless great or extraordinary care is taken to prevent it from doing so.''

The following cases are cited by plaintiff on this point: Brannock v. Elmore, 114 Mo. 55; Dillon v. Hunt, 82 Mo. 155; Mullich v. Brocker, 119 Mo. App. 332. But these cases refer to the obligation which the owner owes to outsiders. No case has been cited, or found by us after extensive research, which extends this obligation to a servant of the independent contractor.

IV. The pleader attempts to predicate liability against the city because of the alleged violation of section 883 of the ordinance, requiring a license to qualify one to do blasting. On this point it is sufficient to say that the law is settled in this State that a city is not liable for failure to enforce its ordinances. [Ryan v. Kansas City, 232 Mo. 471; Loth v. Theatre Co., 197 Mo. 328.]

Tested by the foregoing reasons and authorities, the petition fails to state a case against the defendant city.

The demurrer having properly been sustained, the judgment of the circuit court is affirmed.

*Lamm, Woodson* and *Graves, JJ.,* concur; *Valliant, C. J., Kennish* and *Brown, JJ.,* dissent in opinion filed.

DISSENTING OPINION.

BOND, C.—Plaintiff sues Kansas City (a munic-
ipal corporation) and the Robert J. Boyd Paving &
Construction Company (a business corporation) to
recover for personal damages sustained by the belated
explosion of a stick of dynamite, employed in blasting
rock to make a course for a sewer in process of con-
struction under a contract between the defendants.

The gist of the allegations of plaintiff's petition
is, to-wit: That the defendant city exists and is gov-
erned under a special charter, whereby it is empow-
ered to enact ordinances for causing and regulating
sewer construction, in pursuance of which it has em-
ployed a large number of sewer inspectors; that it is
required by its ordinance to employ, and has employed,
a city engineer, skilled in the science of engineering,
and assistants; that its engineering department super-
vises the construction of public and district sewers;
that its city engineer is required to prepare plans,
specifications and estimates of the costs of all public
work, and report all violations of any contract for
the doing of such work, and to superintend the exe-
cution thereof; that no person is allowed to do any
blasting within said city without first obtaining from
the city engineer a permit therefor, issuable only on
the condition that he is satisfied that the applicant is
"in every particular a safe, careful and suitable per-
son to use and an expert in the use of all explosives
used in blasting," and has entered into a bond, con-
ditioned that such person will carefully and prudently
use such explosive; that said city passed an ordinance
for the construction of a "district sewer in sewer dis-
trict No. 144, approved March 29, 1901," and entered
into a contract with its codefendant for constructing
a sewer in said district; that said contract, among

other things, provided that the work done thereunder should be "in conformity with the plans of such work on file in the office of the city engineer in Kansas City, and in strict obedience to the directions which may, from time to time, be given by said city engineer or his authorized agents, and also in accordance with the following specifications: The contractor shall not blast any rock or allow the same to be done on this work without taking such precautions by covering or otherwise as shall prevent damage or injury to person or property;" that in pursuance of the aforesaid contract, the defendants and each of them employed a gang of men, of which plaintiff was a member, who were under the immediate superintendence, direction and control of a foreman, "who was a vice-principal of defendants, with power to direct them in the performance of their duties;" that plaintiff was a member of a gang of drillers under said foreman, and that it was the duty of the plaintiff and the members of his gang by the use of steel drills, about six feet and four inches long and having bits one and one quarter inches in diameter, to drill holes in the rock through which said sewer was to be constructed, and "that the drilling of said holes under the direction of said foreman was the sole duty of the plaintiff and the members of the drilling gang;" that the work performed by them consisted of drilling "a series of holes about two and one-half deep and about two feet apart," after which the said foreman and powder man (under his immediate direction and control) "would load said holes with giant powder or dynamite, putting about two and one-half sticks of said explosive in each hole, then putting on the cap and fuse for each hole, then tamp each hole full with sand and dirt, and leaving the fuses extending out of each hole, and then said foreman would light said fuses and shoot said series of holes;" that it was usual and customary to count the number of said holes before

exploding them, and then to keep count of the number of explosions as they took place so that it could be known whether any had failed to occur; that the count of the noises of the respective explosions was then verified by an examination of the respective holes which had been loaded with dynamite; that the plaintiff and the members of his gang had nothing to do with the loading and exploding of said holes, nor of the subsequent examinations of the place, nor with the cleaning out of unexploded powder; that these duties were performed by said foreman and said powder man, who were required, after finding from examination that it was safe so to do, to employ a different gang of men to clean up the broken rock caused by said series of explosions; after that was done, "the plaintiff and his gang of drillers would be ordered to drill another series, and this process would be repeated until the excavation was made as deep as desired." The petition then alleges, to-wit: That on the afternoon of July 13, 1901, a series of holes which had been drilled by the plaintiff and his gang of drillers was attempted to be exploded by said foreman (Kelleher) and said powder man (Moriarity); that said July 13 was Saturday, and no work was done in said sewer on the Sunday following; that Saturday and Monday the broken rock caused by the explosion of Saturday was cleaned up by the other set of men under said foreman (Kelleher), with which other set of men plaintiff had nothing to do; that by reason of the negligence and carelessness of the defendants, through said foreman (Kelleher) and said powder man (Moriarity), one of the loaded holes in said series of holes, which said foreman and said powder man had not caused to explode on Saturday, was left filled with dynamite; that the existence of said loaded and unexploded hole was unknown to plaintiff and the gang of drillers with whom plaintiff was working; that the existence of said

unexploded hole and the danger thereof to the plaintiff was known to defendants, or would have been known to them and each of them by the exercise of ordinary care on their part prior to the time of the injury to the plaintiff herein alleged; that on Monday, the 15th day of July, 1901, the defendant contractor and the defendant city, through their foreman (Kelleher) negligently ordered plaintiff and his gang of drillers to go back to the place where said series of holes had been attempted to be exploded on the Saturday previous for the purpose of drilling another series of holes at said place; that in pursuance of said negligent order, said plaintiff and the other drillers in his said gang of drillers went back to said place for the purpose of drilling a new series of holes; and that while one of said gang of drillers was at work drilling a hole near the place where plaintiff was also drilling, his work caused the dynamite which had been negligently left in one of the holes since the Saturday previous to be exploded with great force and violence and to the injury of plaintiff in the following manner: "The total and permanent loss of the sight of both of his eyes, great injury to body, his private parts, his chest, face, forehead, a broken jaw, causing long illness and suffering and mental anguish, and the permanent inability thereafter to do any work, so that he has become an object of charity and an inmate of the poor farm." The petition then adds "that at the time said other driller was at work near the plaintiff neither he nor the plaintiff had any knowledge or warning whatsoever of the existence of said unexploded shot or charge at said place; that said unexploded shot or charge constituted a latent danger in plaintiff's said place of work, and that said latent danger was known, or would have been known by reasonable care, to the defendants and each of them, as well as to their said powder man and their said foreman, and to the inspectors of the defendant city, who were present on

said work throughout the construction of said sewer, superintending said work and giving orders to the foreman and men at work thereon, in time to have enabled said defendants and their said foreman, powder man and inspectors to have removed said unexploded dynamite and to have warned the plaintiff of the existence thereof; that the defendants and their foreman, powder man and inspectors negligently and carelessly failed to remove said danger and negligently and carelessly failed to warn the plaintiff of the existence thereof. But through their foreman negligently and carelessly ordered said plaintiff and his gang of drillers to go to said place and drill a new series of holes at said place where said unexploded charge of dynamite, a highly explosive powder, had been left. The petition charges that said foreman (Michael Kelleher) and said powder man (Maurice Moriarity) *"were not safe, careful or suitable persons to use said explosive, and were neither of them experts in the use of said explosive;"* that neither of them "were competent persons for said work of blasting, and that the defendants and each of them were negligent in entrusting said work to said foreman and said powder man," whose incompetency and lack of expertness in the use of said explosive were known to each of the defendants; that the defendants and each of them negligently failed to select and employ on said sewer construction a blaster who was qualified for the work under the provisions of ordinance No. 883, requiring all such persons to make proof of competency and procure a licence before doing any blasting within said city, which ordinance and every other ordinance pertaining to the work of constructing the sewer, the contract expressly stipulated should be complied with in the doing and progress of the work; that this covenant of the contract was negligently violated by both the defendants; that the work in respect to which said carelessness occurred and which caused

plaintiff's injury was the work of blasting with giant powder or dynamite; that both defendants knew the necessity of said blasting and the necessity to use that dangerous explosive in removing the 2450 cubic yards of rock excavation provided for in their contract; that both defendants knew the incompetency and unfitness of their said foreman and powder man, by reason of which the unexploded stick of dynamite was left in the rock at the place where plaintiff was negligently ordered by them to drill a new series of holes, without any warning or knowledge whatsoever of the proximity of his work to the unexploded stick of dynamite. The petition then specifically charges that the defendants knew that said powder man "by reason of his age and infirmities and general deficiencies was utterly incompetent to be the powder man on said job;" that through the negligence of this incompetent powder man and incompetent foreman the missed shot of dynamite was not discovered and removed, and plaintiff was ordered to work at a place dangerously near thereto without any knowledge or information whatever of the existence of his peril. The petition also charges that the codefendant of the city was an insolvent corporation, "and was not a fit, proper or suitable corporation for the city to enter into said contract with," and that the city was negligent in making said contract, for it knew, or by reasonable care could have known, these facts; that neither the construction company nor its foreman nor blaster had any license or permit, as required by the city ordinance, to do blasting on said work, and that the defendant city and its codefendant negligently and carelessly violated their contract requiring that such license should be procured before the work was done.

The contract set out in the petition empowered the engineer to direct the "mode" of doing the work, and provided that if any person "refused or neglected" to obey his instructions, or appeared to him

to be incompetent, that such person should "be at once discharged;" that the engineer should have power to annul the contract for good cause, and his decision should be conclusive of the existence of such cause on all litigation between the parties and should preclude any damages therefor.

The petition also pleaded that the legal effect of the contract vested the defendant city with full control and direction as to the manner of doing the work, the materials to be used, and the result to be accomplished in its entire performance.

To this petition, the defendant city interposed a general demurrer, which was sustained. Plaintiff voluntarily dismissed as to the defendant Construction Company, and appealed from the order sustaining the demurrer and dismissing his petition.

I. In considering this appeal it must be constantly borne in mind that Kansas City is a municipal corporation, and, as such, possesses a double capacity—the one public or governmental, the other private or contracting; that in the exercise of its first function it can incur no civil liability to any person; that in the exercise of its second faculty it is suable by any aggrieved person, and is subject to the same control which the courts exert over all persons; that in the work of constructing sewers, whether directly or by letting to contract, Kansas City acts only within its business powers; and for its contracts and torts in the prosecution of that work is open to suit in the same manner and to the same extent as a private person doing or causing to be done the same work. [Donahoe v. Kansas City, 136 Mo. 665; Dolan v. Laclede Gas Light Co., 145 Mo. 550; Ely v. City of St. Louis, 181 Mo. 723; State ex rel. v. Gates, 190 Mo. l. c. 550; Barree v. Cape Girardeau, 197 Mo. l. c. 389; Broad-

well v. City of Kansas, 75 Mo. 213; Werth v. City of
Springfield, 78 Mo. 107; Wegmann v. City of Jeffer-
son, 61 Mo. 55; Thurston v. City of St. Joseph, 51 Mo.
510.] That the defendant city, like every municipal
corporation, is under a primal duty, which it cannot
delegate, to keep its streets and sidewalks in a con-
dition of reasonable safety, for the use of persons act-
ing with ordinary care. [Ryan v. Kansas City, 232
Mo. 471; Russell v. Columbia, 74 Mo. 480; Welsh v.
St. Louis, 73 Mo. 71.]

II. Plaintiff's petition must be reviewed under
the rule prescribed for that purpose by statute, to-
wit: "In the construction of a pleading for the pur-
pose of determining its effect, its allegations shall be
liberally construed with a view to substantial justice
between the parties." [R. S. 1909, sec. 1831.] Now,
the petition in this case is met by a general demurrer
only. This form of attack does not reach any indefi-
niteness or imperfection of statement less than a total
omission of all allegations from which any cause of
action may be fairly implied or inferred. [Rodgers
v. Fire Ins. Co., 186 Mo. l. c. 255-6; Eads v. Gains, 58
Mo. App. l. c. 594; State ex rel. v. Carroll, 63 Mo. 156;
Marie v. Garrison, 83 N. Y. 14-23.]

The only defense urged by the defendant in this
case is that the allegations of the petition demon-
strate that the contract between it and the contract-
ing company created the relation of owner or proprie-
tor and independent contractor; and, hence, that it
is not responsible in damages either to the public at
large or the servants of the contractor for any injury
caused by the wrongful or negligent conduct of the
contractor or its representatives in the performance of
the work. In order to maintain this defense, the defend-
ant city must show from the allegations of the petition
that relation was *legally* created. There are cases in
which it is held that the owner or proprietor may be

sued by his own servants for the tortious acts and negligences of the independent contractor or his representatives. [Herdler v. Buck's Stove & Range Co., 136 Mo. l. c. 16; Burnes v. Railroad, 129 Mo. l. c. 56; Leslie v. Coal Mining Co., 110 Mo. 31; Sackewitz v. Am. Biscuit Mfg. Co., 78 Mo. App. l. c. 153; Bartley v. Trorlicht, 49 Mo. App. 231-2-3; Northern Pac. R. R. Co. v. Herbert, 116 U. S. 642; The Magdaline, 91 Fed. 798; Chicago & Alton R. R. Co. v. Eaton, 194 Ill. 441.] As the plaintiff in this case was not ostensibly the servant of the city, his right to recover, like that of any innocent passer-by, who might have been injured in the same way, must depend upon the *legal* relationship of the city and the contracting company, as it is disclosed by the facts stated in the petition.

This reduces the matter to a single issue of law, based upon the fair legal intendment of the facts pleaded. Does the transaction between the parties show as a necessary legal conclusion that the Construction Company became an independent contractor, as that status is defined by law?

If one person is set to work upon the property of another, he must act in one of two capacities: first, as the servant or agent of the owner, who is therefore responsible for his acts in the course of his employment; or, second, as an independent contractor, by virtue of a contract *sufficient in law* to create that relation, in which case his torts and negligencies cannot be imputed to the owner by his servant or the public. There is no middle position which can be occupied by one person who is in possession and at work on the property of another by the owner's consent or permission. He must be there either on behalf of the owner or on his own behalf under a valid contract to that effect. For he could only be on the premises otherwise by a trespass, and that is neither claimed nor could it be claimed under the case made in this petition. Now, the law has distinctly and positively

adjudged the elements necessary to the formation of a contract whereby one becomes an independent workman on the property of another. It follows that any agreement with the owner which lacks any element necessary to make the workman an independent contractor, leaves him occupying the only other condition which has been shown to remain, that of representative, agent or servant of the owner. The legal formula of a contract adequate to create the relation of independent contractor between a workman and the owner of the property has been crystallized into certain and positive requirements which have been again and again quoted in exact language and adopted by the appellate courts of this State in an unvarying current of authority. It is thus expressed: ''The general rule is that one who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work, not in itself unlawful or attended with dangers to others, according to the contractor's own methods and without his being subject to control, except as to the results of his work, will not be answerable for the wrongs of such contractor, his sub-contractor, or his servants, committed in the prosecution of such work. An independent contractor, within the meaning of this rule, is one who renders service in the course of an occupation representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished.'' [2 Thompson on Negligence, p. 899, sec. 22; Gayle v. Missouri Car & Foundry Co., 177 Mo. l. c. 446; Fink v. Missouri Furnace Co., 82 Mo. 276; Hilsdorf v. St. Louis, 45 Mo. 98; Young v. Moon, 107 Mo. 334; Crenshaw v. Ullman, 113 Mo. l. c. 639; Lancaster v. Insurance Co., 92 Mo. 460; Dillon v. Hunt, 82 Mo. 150; Loth v. Columbia Theatre Co., 197 Mo. l. c. 354; Mullich v. Brocker, 119 Mo. App. l. c. 337; Wharton on Negligence, sec. 181; Brannock v. Elmore, 114 Mo. l. c. 62; McGrath v. St. Louis, 215 Mo. l. c. 209.]

To obtain the shield of an independent contractor, the owner or proprietor must, first, select *"a competent and fit person,"* engaged in an independent calling; second, the work committed to him must be neither *"attended with danger to others"* nor unlawful; third, the contractor must be allowed to do the work according to his own methods and only subject to control by the owner "as to the *results* of his work." Without the concurrence of each and all of these conditions, the condition of independent contractor cannot legally exist. The decisions in this State have not only affirmed this doctrine by the adoption of the foregoing definition, but they have held, on the various occasions when it became necessary to consider the effect of the absence of any one of these legal requirements, that the relationship of owner and independent contractor was thereby prevented, and that the owner was left responsible just as if he did the work on his own behalf. As far as necessary we will cite these instances *seriatim.*

First. As to the necessity of contracting with "a competent and fit person." The case was this: The defendant was excavating his lot for the purpose of erecting a house thereon. The excavators were independent contractors. Plaintiff was injured by a fragment of rock thrown into the air by the blasting made by the excavators contrary to the safeguards of a city ordinance. The court held that the ordinance in question was a wise and valid regulation and made for the protection of persons and property from injury, and had it been observed the injury to plaintiff "would not probably have occurred;" that the evidence showed that the owner was acquainted with the careless methods of blasting adopted by the contractors, and that this would entitle the plaintiff to recover. Adding, "An employer cannot relieve himself from liability by giving the contract to one who is known to be incompetent or negligent." citing cases.

[Brannock v. Elmore, 114 Mo. 1. c. 62.] Again, plaintiff's two year old child fell into a vault left uncovered by an independent contractor in construction work on the owner's premises. The court held under these facts that there could be no recovery solely for the following reasons: "It is not alleged and there is no evidence tending to prove that the contractor was not a competent person to do the work. The work was not in itself of a dangerous character, did not necessarily create a nuisance, nor involve a trespass upon the property of others, and the defendant did not interfere in the direction of its performance. In such case the defendant (the owner) cannot be held liable for the negligence of the contractor, and the action of the court might well be sustained on this ground." [Wiese v. Remme, 140 Mo. 1. c. 298-299.] In a recent case, speaking of the effect of failure on the part of the owner to select a fit and competent person, this court, after showing that the work complained of was *not* dangerous but was caused by the mere "negligence" of an independent contractor or his servants in the execution of it, added: "In the latter case the contractor alone is liable unless the owner is in default in employing an unskilful or improper person as contractor." [McGrath v. St. Louis, 215 Mo. 1. c. 209.] The court accordingly held in that case that, there being nothing dangerous in the character of the work to render the owner liable and the injury having been caused by the mere negligence of a *competent* and *fit* contractor, the defendant city was not liable to the plaintiff for damages so received. This question was also ruled in the St. Louis Court of Appeals. There the injury complained of resulted from damage to plaintiff's property from being run into by a horse which had been delivered by the defendant for the purpose of having it broken to harness. The question arose, whether the party undertaking to do this was an independent contractor. Af-

ter defining what was necessary to constitute him as such and adverting to the evidence tending to show that he lacked competency for that employment, the court said: "But a proprietor will not be exonerated from liability for negligence in the doing of work which he lets out to an independent contractor unless he used care to select a competent person as contractor —one who not only had an occupation, but reasonable skill in performing the tasks pertaining to it. If a person entrusts the performance of work, of a kind likely to result in harm to third persons unless cautiously and skilfully done, to a manifestly unfit person, as an independent contractor, the employer will be responsible for the consequences of such contractor's incompetency. Breaking horses to harness is not necessarily dangerous to others, if properly done; and in selecting a contractor to do work of that character, a proprietor need only use ordinary care to choose a competent person. But if he is careless in selecting, he remains liable. [Citing cases.] It follows that if Brocker carelessly selected an incompetent person to break the horse, he was liable for an injury resulting from his contractor's negligence." [Mullich v. Brocker, 119 Mo. App. 1. c. 339.]

The basic idea of this principle is, that a person exercising a special calling must possess reasonable skill and qualification for that work, without which he is not in reality a contractor, builder, architect or manufacturer, as the case may be; and that the owner, having knowledge of such deficiency, cannot supply it by mere agreement and thereby *make* him in law what he is *not in fact*. The effect of these decisions is in strict accord with the foregoing definition which they apply as the test of the status of an independent contractor. Hence, where the contract of the owner fails on account of the known incompetency of the ostensible independent contractor to create that relation with him, the contractor is thenceforward only to be re-

garded in law as acting on behalf of the owner; and the owner's responsibility is then measured by the settled rules of master and servant. This has been distinctly ruled in each of the four cases last cited so far as the general public can be affected. Why does not the same principle apply when an action is brought against the owner by an employee of such ostensible contractor, and when it is shown that the injury occurred solely by reason of his inefficiency and incompetency, and that these were known to the owner at the time he attempted to employ the contractor? There can be no distinction in the right to recovery of such servant and a member of the general public, if, as has been shown, such a contract between the owner and contractor was legally insufficient to serve its purpose and therefore left the parties in the only other possible relation, to-wit, that of owner or proprietor who has put another, whose incompetency he knows, to the doing of constructive or other work on his property. The reason given for an attempted distinction is, that the owner has no contractual relations with the employees of the workman. The answer is, that the owner has no contractual relations with the general public, and yet his liability to one of them for an injury resulting from the employment of an incompetent contractor is unquestioned under the decisions in this State. It must follow that no distinction can exist in the two cases founded on the want of contractual relations. And that it cannot be scientifically held that redress may be had by one which is not obtainable by the other, unless some *other* distinction can be found in the cases. The truth is, that, if the existence of contractual relations is at all necessary, then in law and in fact the servant of a contractor who has been employed with actual knowledge of his incompetency, *is* in contractual relations with the owner, because the effect in law of an employment so made is to make the contractor the mere representative of the

owner. This is a greater reason why such servant should not be shut off from a recovery which is open to a member of the general public having no contractual relations with the owner either in fact or in law. If a higher right exists in either case, it attaches to the position of servant of the pseudo-contractor, for the owner or proprietor *knew* when he employed him of his unskilfulness and incompetency, and knew that he must bring to his work ordinary laborers, like the plaintiff, who would probably suffer injury by reason of his want of skill and capacity, and that such would be the direct result of the contract made by the owner. With such knowledge and so contracting, the owner can, in reason, possess no greater defense when sued by the servant of the alleged contractor than if sued by a member of the general public, injured in the same way. Suppose, when this injury occurred, a lounger on the streets of the city had been struck by the *same* explosion which injured the plaintiff. As to such passer-by the liability of the defendant city is settled by the foregoing decisions in this State, under the averments of the petition that such injury was caused by the incompetency of the man in charge of the work, which was known to the city at the time he was employed. Can the plaintiff be in a worse position than that of the street lounger? Plaintiff was employed to do manual labor, and while pursuing that calling and with no knowledge, thought or warning of the danger which impended from the interposition between him and the city of an *incompetent* contractor, was his situation less protectable by the law than that of the vagrant injured at the same time, place and manner? It is submitted this statement of these concrete facts to which the position assumed on behalf of the city leads, necessarily proves that it cannot be maintained with any regard to logic and principle or to justice and harmony in the administration of the law. The rule that an owner is disabled by law from making

an incompetent person his independent contractor by merely agreeing so to do, with knowledge of his incompetency, is clearly and explicitly held in all the courts of Missouri. But it is said there is a different ruling in a case cited from Minnesota. [Schip v. Pabst Brewing Co., 64 Minn. 22.] As to this case, the learned annotator of the Lawyers' Reports, after citing it, adds: "But the weight of authority is opposed to the restricted doctrine thus enounced." He states further, that it is contradicted by numerous decisions elsewhere which exempt an employer from liability only who has used reasonable diligence to select a "competent contractor." [Citing cases.] And adds conclusively, to-wit: "The doctrine that the employment of an incompetent contractor is culpable negligence which raises a cause of action in favor of any one who is injured by conditions or occurrences which would not have existed or happened if the contractor had been competent, is also sustained by categorical statements and explicit decisions." [Citing the Missouri cases and numerous decisions of other States; 66 L. R. A. 942, and notes by the Annotator.] It can hardly be that the courts of Missouri should be asked to overturn the settled rule announced in its own decisions in favor of the irrational doctrine and unsupported view of the Minnesota court. We, therefore, rule that the petition in this case did state a prima facie cause of action for injuries suffered by the plaintiff in consequence of the negligence of the incompetent corporation, acting in the role of independent contractor, and in consequence of the negligence, unfitness and want of qualification of its foreman (Kelleher) and its blaster (Moriarity); all of which was known to the defendant city when it made the contract for letting the work and during the prosecution thereof, as is shown by the statements in plaintiff's petition, which are to be taken as true in reviewing the rulings sustaining the general demurrer.

III. The next essential comprised in the above quoted definition is, to-wit, that the owner cannot delegate his responsibility for ordinary care on the part of the contractor employed to perform work which is *"attended with danger to others."* The violation of this requirement of the law has been repeatedly presented and adjudged in the decisions in this State, and it has been settled that such responsibility on the part of the owner is non-delegable, and no case has been presented in this State wherein he was permitted to divest himself of that duty by letting the work to another person. In one of the earliest cases an employee of the contractor engaged in altering a building was injured by the falling of a wall. He sued the owner of the property, who made two defenses: First, a denial of negligence; and, second, a plea that the entire work was done by contractors in accordance with plans of an architect and that the injury sued for arose thereafter "from the carelessness of contractors," etc. Under this plea defendant's evidence tended to show that a carpenter working for the contractor negligently removed a prop, causing the wall to fall upon the plaintiff. As to this defense and the evidence tending to sustain it, the court conceded that the accident happened *after* the turning over of the premises to the contractor, and said: "But if the defendant's plans of rebuilding, as recommended by his architect, required the use of materials and structures that were unsafe, his responsibility, for any injury accruing by reason of such plans, was not transferred to the contractors." Adding: "There can be no question of the liability of defendant, if the damage resulted from inherent defects in the old wall, which the contractors were directed to make use of in the new building." The verdict and recovery by the plaintiff were affirmed. [Horner, Adm'r, v. Nicholson, 56 Mo. l. c. 222, 235.] The same principle was held to entitle an adjoining proprietor to recover of the

owner of a building for injuries caused by its being negligently pulled down by an independent contractor. The court saying: "It is immaterial in such case whether the work be done by the proprietor or by an independent contractor." [Dillon v. Hunt, 105 Mo. l. c. 161.]

Again, the right of an adjoining proprietor for damages to her property caused by the excavating work of an independent contractor engaged in the service of another, was held to exist against the owner who employed the contractor, if the petition had stated that the work was in its nature dangerous to the property of others, the court saying: "In cases of this character it seems that the principal is liable for any injury that is occasioned by reason thereof, notwithstanding the relation of *respondeat superior* may not exist, and the party doing the work is an independent contractor." [Crenshaw v. Ullman, 113 Mo. l. c. 640, citing Thompson on Negligence, sec. 24, p. 901.]

Again, the job of lowering signs had been let to an independent contractor. A passer-by was injured. The owner and not the contractor was sued. The court held that a recovery could be had, adding: "But the injury in the case at bar resulted directly from the acts called for and made necessary by the contract, that is, the changing and replacing of the sign, and not from acts which were merely collateral to the contract; and if by the negligence and carelessness of the men handling the sign it fell upon and injured plaintiff, the company is liable as if it had directly performed such acts." [Loth v. Columbia Theatre Co., 197 Mo. l. c. 354, citing Bridge Co. v. Steinbrock, 61 Ohio St. 215; Deming v. Railroad, 169 N. Y. 1; Inhabitants of Lowell v. Railroad, 40 Mass. 24; 16 Am. & Eng. Ency. Law (2 Ed.), 196.]

It is not claimed that these decisions do not settle the principle that an owner cannot shift to another his duty to see that "work attended with danger," if

done on his property, shall be performed without negligence; but it is urged, first, that this rule cannot be invoked by an employee or servant of the contractor; and, second, that the blasting contracted for in this case, was not work attended with danger to others. This first objection is completely within the reasoning whereby it was shown above, that the contention that an owner might be liable to the public, but not to the servants of the contractor, for injuries caused by the owner's employment of a person known to be unfit and incompetent to perform the work, is without any support either in reason or authority. All that was then said applies with equal conclusiveness to the renewal of that objection at the present time. No valid reason can be given why such a distinction should be made. The legal principle upon which the liability of the owner depends is, that he shall not *directly* nor *indirectly* put his property to such use as probably to injure others, without at the same time assuming responsibility for such injuries in so far as they are caused by his own negligence or the negligence of his substitute in the work. This creates a non-delegable duty, as to which it has been said with conclusive logic, "It is a contradiction in terms to speak of an absolute duty as being susceptible of delegation. If it can be delegated in any particular instance, it ceases, *ex hypothesi,* to be absolute." [2 Labatt on Master and Servant, sec. 559.]

We have been totally unable to find any precedent which announces a logically tenable ground for the doctrine that the owner, resting under a personal duty cast upon him by law as an essential incident to his ownership of property, may commit a breach of that duty without incurring liability to any person thereby injured, whether his own servant or the servant of one who (as contractor with the owner for doing that duty) negligently fails in its performance, or to a

241 Sup.—5

stranger. The duty being an imperative one and put upon the owner by law, he must perform it himself with due care or answer for due care on the part of any other person to whom he may transfer its performance. For this reason he cannot *make* the transferee of that duty an independent contractor under settled principles of law. This incapacity of the owner is explicitly noted in the words of the definition of that relation quoted above and uniformly adhered to in this State.

The next objection is as to character of the work. Was this work "attended with danger to others?" In the cases illustrative of dangerous work, above cited, we find that it was held to apply to turning over to an independent contractor the task of remodeling a building. The danger in that case grew out of the falling of an existing wall, caused by the pulling away of a prop by one of the servants of the contractor, to the injury of another. In the next case the danger arose to adjoining property from excavating work necessary to the erection of a building, done by an independent contractor. In the third case, the danger ensued from the work of lowering a sign attached to a projecting beam in front of the Columbia theatre. In each of these cases it was expressly adjudicated that the given work was "attended with danger to others." In the case at bar the contract called for blasting by dynamite a mile and a third (2450 yards) of solid rock. Is it conceivable that this work was less dangerous than the three former instances in which it was so held? Is it not clear that the destructive natural force called into play by igniting sticks of dynamite inserted into bodies of solid rock is infinitely more dangerous than remodeling a standing wall, or excavating a cellar, or lowering a sign? No possible misapprehension existed in the minds of the city authorities, for they passed a law that this particular work (blasting) should not be done within the limits

of the city without a thorough ascertainment of the
skilfulness and competence of the person doing the
same, and without a license thereafter so issued to
him, based on that finding. This clearly shows that
the city knew the peril likely to ensue from such work,
and adopted a valid safeguard to prevent injuries
therefrom. It is apparent the city not only had knowl-
edge of the true character of the work in question
but provided a safeguard (which it did not comply
with) for minimizing the danger. This knowledge
possessed by the city of the dangerous character of
the work is one which is also within the judicial knowl-
edge of the courts. In the case of FitzSimons & Con-
nell Co. v. Braun & Fitts, 199 Ill. l. c. 394, it is said:
"The nature and power of dynamite as an explosive
have been demonstrated by universal experience, and
it is a matter of common knowledge that the use of
dynamite as an explosive is intrinsically dangerous,
and of this the courts will take judicial notice." This
was affirmed in the case of City of Chicago v. Murdock,
212 Ill. l. c. 12, where it was also held that the city
could not divest itself of the character of princiṗ l
by letting a contract of that sort for the making of a
public improvement within its limits, and that it was
liable for damages caused by the negligence of the
contractor on the doctrine of *respondeat superior.*
[Ibid., 13.] Again, the Supreme Court of Connecticut,
after an exhaustive examination of the authorities and
in conformity with the text of Cooley on Torts, said:
"We think, also, that the operation of blasting with
dynamite is 'intrinsically dangerous;' that the court
should have taken judicial notice that it is so. . . .
It is a sound rule of law as of morals, that when, in the
natural course of things, injurious consequences will
arise to another from an act which I cause to be done,
unless means are adopted by which such consequences
may be prevented, I am bound, so far as it lies within
my power, to see to the doing of that which is neces-

sary to prevent the mischief. Failure to do so would
be culpable negligence on my part. [Citing an English
case.] Certain of the provisions in the specifications,
to which reference has been made, were apparently in-
serted in recognition of this principle. [This case was
sewer construction.] But in such cases it is not suffi-
cient that the employer contracts with another to use
the care to prevent harm, which the hazardous nature
of the stipulated work requires. He is bound, at his
own peril, to see to it that such care is used. And he
is responsible, as for his own negligence, if it is not.''
[Norwalk Gaslight Co. v. Borough of Norwalk, 63
Conn. 1. c. 527-528.]

We think in reason, experience, authority, and
from the very terms of the contract made by the city,
it is evident that the work of blasting as stipulated
for was ''attended with danger to others,'' and that
this fact was known to the city at the time of the letting
of the contract; and that the petition under review
also states a prima facie cause of action against said
city for the injury to plaintiff, caused by the negligence
of the contractor or its representatives in the prose-
cution of the work.

This reasoning does not involve, as has been sug-
gested, the liability of the owner to the independent
contractor himself. The latter plies his particular
trade for livelihood. This implies a representation
on his part that he is possessed of the requisite skill
and competency. When he solicits employment in his
own calling, he cannot ask the employer, who knows
nothing of his special craft, to indemnify him against
his own lack of qualification for his own trade, or
against his own negligence. Such a notion is contrary
to the axioms of the law. *Volenti non fit injuria.*
[Broom's Leg. Maxims (5 Ed.), note p. 270.] On the
other hand, the mere laborers employed by the person
assuming to be a fit contractor have no skill in his
particular mystery, nor are they expected to do other

than manual work. This fact is well known to all employers and the public in general. Hence the relationship of the owner to them is essentially and radically distinct from that which he bears to the master of the handicraft.

The principle we affirm is, that in turning over work "attended with danger" to a contractor, the owner assumes no liability whatever with respect to him; but does assume that the dangerous work shall be performed with ordinary care, and that this responsibility extends to the common laborers, whom the owner knows must be employed by the contractor to assist in doing the work, as well as to strangers.

The case of Blumb v. Kansas City, 84 Mo. 112, is in irreconcilable conflict as to its ruling with the established law in this State. In the Blumb case, a lady was using a street whereon a contractor with the city was engaged in blasting to construct a sewer. The evidence showed that the city engineer who superintended the work had knowledge "that the men engaged in the work were guilty of carelessness in making the blast;" that neither the city nor its engineer took any steps "to stop this careless blasting." Plaintiff recovered $2000. It was nevertheless held that this should be reversed, and that it was not necessary under those facts for the city "to suspend or cancel the contract let." If that doctrine could be sound, then the established rule in this State, enounced in every other case in which it has come up for review, that the city is under an absolute duty to keep its streets reasonably safe, must be repudiated. This undelegable duty on the part of the city is, however, maintained in the following cases: Ryan v. Kansas City, 232 Mo. 471; Benton v. St. Louis, 217 Mo. 1. c. 700 (the latter citing all the cases); Lindsay v. Kansas City, 195 Mo. 1. c. 178. The duty in question is nowhere stated with more pith and clearness than by LAMM, P. J., in the case of Benton v. St Louis, supra, where it is said:

"It (the city) cannot shirk that duty, or shift it over to, or halve it with, others. So much is the clear law in Missouri." In the light of this settled rule in this State, the Blumb case is illy considered, and on this point should be overruled.

IV. Wholly independent of the liability of the defendant city arising from its abortive attempt by contract to make a *competent* contractor out of a corporation and its managers and representatives who it knew at the time of the contract were not such, and wholly aside from its effort to delegate to such corporation and persons its absolute duty to be responsible for the careful performance of work attended with danger, there is another distinct ground for the creation of a cause of action against the defendant city, which is positively alleged and stated in the petition in this case. It is this. The petition alleges that the city contracting through its engineer with the Construction Company stipulated and covenanted that each and all of its ordinances applicable to the doing of the work in question should be complied with (including the ordinance regulating blasting and requiring competent and licensed persons for that duty). This obligation assumed by the city enured to the benefit of all persons who would be injured by its breach. The defendant city, according to the allegations of the petition, committed an intentional and known breach of this contract and duty assumed by it and became liable for this neglect to any person thereby injured. This was not a case of liability arising from the failure on the part of the city to enforce a police ordinance. But the case made by the petition and the contract entered into by the city, is one for negligent breach of duty to require and prescribe safeguards to be employed in the doing of the work. That an action may be brought against the city which has let out work on its streets, for negligence, and that the ordi-

nances of the city regulating such work are *evidentiary*, in support of such action, has been distinctly and positively enounced by this court in a recent opinion with great clearness and force. According to the positive allegations of the petition under review, a cause of action is stated against the city for the negligent breach of its duty to require the work of sewer construction to be performed in strict accordance with its own ordinance safeguarding it. That ordinance and the contract requiring its precautions to be observed are set out in the petition in this case, and the charge is that the city negligently and knowingly failed to do its duty assumed by its positive agreement. Now, in speaking of the force and admissibility of such a precautionary ordinance, this court said: "The ordinances themselves do not make a prima facie case, but may be considered with other facts in determining the question of negligence or no negligence on the part of the city." [Ryan v. Kansas City, 232 Mo. 1. c. 485.] This differentiation between a cause of action originating from mere non-enforcement of a police ordinance and a cause of action based on negligence, in support of which such an ordinance is admissible, is clear and conclusive. Under the duty assumed by its contract in this case, the city was bound to require the observance of the safeguards prescribed by it, and which it covenanted to do in the very terms of the contract itself. Its *negligence* in failing to do this is the origin of one of the causes of action in the petition. Hence the ordinance in question is admissible in evidence as tending to prove that negligence, and for the added reason that the city *contracted* that it should be obeyed in this particular instance.

For this reason we hold that the petition under review stated a cause of action entirely apart from any relationship, if such could have existed, which is denied, of employer and independent contractor on the part of the city and its codefendant.

Our conclusion is that the allegations in the petition in this case, fairly interpreted, state three causes of action: First, for negligence arising out of the employment of a contractor known to be incompetent and unskilful; second, for the negligent performance of work "attended with danger to others" by the contractor and its foreman and its blaster; third, for negligence and breach of duty on the part of the city in failing to require the observance of the safeguards against injury, which it contracted should be used

These conclusions put no obstacles whatever in the way of improvement and progress, for the defendant city has ample power and is charged with the duty under its own laws to take bonds indemnifying it against any liability arising in the manner stated in this petition.

The general demurrer in this case should be overruled, and the city required to answer or make other defense to the causes of action stated in the petition.

This cause in Division Two was assigned to *Bond, C.,* and his opinion, concurred in by *Roy, C.,* was approved by said Division. As rewritten by *Bond, C.,* since the majority opinion, it is adopted as the dissenting opinion of *Valliant, C. J.,* and *Kennish* and *Brown, JJ.*